## IN THE UNITED STATES COURT OF APPEALS
## FOR VETERANS CLAIMS

| | | |
|---|---|---|
| **MARK FREUND and** | ) | |
| **MARY S. MATHEWSON,** | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Vet. App. 21-4168 |
| | ) | |
| **DENIS McDONOUGH,** | ) | |
| in his capacity as | ) | |
| Secretary of Veterans Affairs, | ) | |
| | ) | |
| Respondent. | ) | |

## NOTICE OF APPEAL

Mark Freund and Mary S. Mathewson, the current named Petitioners before this Court in this action, respectfully give notice that they hereby appeal to the U.S. Court of Appeals for the Federal Circuit from the final judgment that this Court entered in this action on and effective November 14, 2022, in connection with the order that this Court issued on October 20, 2022, to deny this action's Request for Class Certification and Class Action and to dismiss the action's Petition.

Dated: January 6, 2023

Respectfully submitted,

/s/ John D. Niles
John D. Niles
Kenneth H. Dojaquez
Carpenter Chartered
P.O. Box 2099
Topeka, KS 66601
785-357-5251
john@carpenterchartered.com
kenny@carpenterchartered.com

*Counsel for Petitioners*

**General Docket**
**United States Court of Appeals for Veterans Claims**

| | |
|---|---|
| **Case Number:** 21-4168<br>Mark Freund, et al v. Denis McDonough<br>**Appeal From:** Department of Veteran Affairs<br>**Fee Status:** dfh | **Docketed:** 06/21/2021 |

**Case Type Information:**
  **1)** Petition
  **2)** -
  **3)** -

---

Mark Freund
    Petitioner



 

 

Mary S. Mathewson
    Petitioner

 

 

v.

 

Denis McDonough, Secretary of Veterans Affairs
    Respondent

John Niles, Esq., Attorney
Direct: 785-357-5251
[COR LD NTC]
Firm: 785-357-5251
Carpenter Chartered
P.O. Box 2099
Topeka, KS 66601

Kenneth H. Dojaquez, Esq., Attorney
Direct: 785-357-5251
[COR NTC]
Firm: 785-357-5251
Carpenter Chartered
P.O. Box 2099
Topeka, KS 66601

John Niles, Esq., Attorney
Direct: 785-357-5251
[COR LD NTC]
(see above)

Kenneth H. Dojaquez, Esq., Attorney
Direct: 785-357-5251
[COR NTC]
(see above)

Alexander You, Esq., Attorney
Direct: 202-632-4337
[COR LD NTC]
Firm: 202-632-4337
Office of General Counsel (027C) Dept. of
Veterans Affairs
810 Vermont Ave NW
Washington, DC 20420

OGC-ICM8, Non-Attorney
Direct: 202-632-5984
[COR NTC]
Department of Veterans Affairs, OGC (027)
810 Vermont Avenue, N.W.
Washington, DC 20420

| | | |
|---|---|---|
| 06/21/2021 | 🔒 | Petition for extraordinary relief (SM) |
| 06/21/2021 | 📄 | Declaration of Financial Hardship for J. Freund (SM) |
| 06/21/2021 | 📄 | Declaration of Financial Hardship for M. Mathewson (SM) |
| 06/21/2021 | 📄 | Appearance of Attorney(s) John Niles for party(s) Petitioner J. Roni Freund, in case 21-4168 as lead counsel (SM) |
| 06/21/2021 | 📄 | Appearance of Attorney(s) Kenneth H Dojaquez for party(s) Petitioner J. Roni Freund, in case 21-4168 as co-counsel (SM) |
| 06/21/2021 | 📄 | Appearance of Attorney(s) John Niles for party(s) Petitioner Mary S. Mathewson, in case 21-4168 as lead counsel (SM) |
| 06/21/2021 | 📄 | Appearance of Attorney(s) Kenneth H Dojaquez for party(s) Petitioner Mary S. Mathewson, in case 21-4168 as co-counsel (SM) |
| 06/21/2021 | 🔒 | Fee Agreement for J. Freund (SM) |
| 06/21/2021 | 🔒 | Fee Agreement for M. Mathewson (SM) |
| 06/21/2021 | 📄 | Request for Class Certification and Class Action (SM) |
| 06/22/2021 | 🔒 | Notice of Docketing for petition for extraordinary relief (SM) |
| 06/24/2021 | | Assigned case to Judge Allen (APS) |
| 06/29/2021 | 📄 | It is ORDERED that this case is submitted to the panel of Judges Allen, Meredith, and Laurer for decision. (GOB) (KM) |
| 06/30/2021 | 📄 | Notice or other pleading by Petitioners - *Notice of Related Cases* (JN) |
| 07/01/2021 | 📄 | Notice or other pleading by Petitioners - *Solze Notice* (JN) |
| 07/02/2021 | 📄 | Appearance of Amanda Radke for Denis McDonough, in case 21-4168 as lead counsel (AR) |
| 07/06/2021 | 📄 | PER CURIAM ORDERED that within 90 days of the date of this order, the Secretary file a response to the petition not exceeding 25 pages. The petitioners may, but are not required to, file a reply, not exceeding 15 pages, within 30 days of the date on which the Secretary files his response. And it is further ORDERED that within 90 days of |

| | | |
|---|---|---|
| | | the date of this order, the Secretary file a response to the RCA not exceeding 30 pages. The petitioners may, but are not required to, file a reply, not exceeding 15 pages, within 30 days of the date on which the Secretary files his response. (ALLEN, MEREDITH and LAURER) (AMN) |
| 07/12/2021 | | Appearance of Alexander You for Denis McDonough, in case 21-4168 as lead counsel (AY) |
| 10/04/2021 | | Mot of Respondent to ext time to file response to Court Order until 10/12/2021.--[Edited 10/04/2021 by PTD]--[Edited 10/05/2021 by AMN] (AY) |
| 10/04/2021 | | Mot of Respondent to ext time to file response to Court Order until 10/12/2021. (AY) |
| 10/05/2021 | | Judge's stamp order for the panel granting Respondent's motion to extend time to file response to Court Order for petitioner's request for class certification and class action until 10/12/2021 (ALLEN) (AMN) |
| 10/05/2021 | | Judge's stamp order for the panel granting Respondent's motion to extend time to file response to Court Order and petition for extraordinary relief until 10/12/2021 (ALLEN) (AMN) |
| 10/12/2021 | | Respondent's response to the petitioner's request for class certification and response to the 07/06/2021--[Edited 10/13/2021 by AMN] (AY) |
| 10/12/2021 | | Respondent's response to the Court's ord dated 07/06/2021--[Edited 10/13/2021 by AMN] (AY) |
| 11/08/2021 | | Petitioners - *Reply in Support of Petition*--[Edited 11/08/2021 by AMN] (JN) |
| 11/08/2021 | | Petitioners - *Reply in Support of Request for Class Certification and Class Action*--[Edited 11/08/2021 by AMN] (JN) |
| 11/29/2021 | | PER CURIAM ORDERED that the Clerk of Court will schedule oral argument in this matter as the business of the Court permits. It is further ORDERED that counsel for the parties be prepared to discuss the issues set forth in this order. And it is further ORDERED that within 45 days of this order the Secretary file a supplemental memorandum not exceeding 15 pages addressing the matters set forth above. (ALLEN, MEREDITH and LAURER) (NK) |
| 12/08/2021 | | It is ORDERED, pursuant to Rule 34 of the Court's Rules of Practice and Procedure, that oral argument is set for Thursday, February 10, 2022, at 1:00 p.m. before the panel of Judges Allen, Meredith, and Laurer. Whether oral argument will be held in person or remotely will be determined at a later time, with early notice given to the parties. Counsel for the parties are allotted 30 minutes each for presentation of argument. (DB) |
| 01/13/2022 | | Response by Respondent *to the Court's order dated 11/29/2021* (AY) |
| 02/03/2022 | | Petitioners Notice of Supplemental Authority (Cardona)--[Edited |

| | | |
|---|---|---|
| | | 02/04/2022 by AMN] (JN) |
| 02/10/2022 | | Case argued before Judges Allen, Meredith, and Laurer. (DB) |
| 03/10/2022 | | PER CURIAM ORDERED that, no later than 30 days after the date of this order, the Secretary file with the Court an affidavit or affidavits addressing the matters set forth above. (ALLEN, MEREDITH and LAURER) (AMN) |
| 03/24/2022 | | Notice or other pleading by Petitioners - *Solze Notice* (JN) |
| 04/11/2022 | | Response by Respondent *to the Court's March 10, 2022, Order* (AY) |
| 04/21/2022 | | Motion of Petitioners for leave to file *Response to the Secretary's April 11, 2022, Supplemental Memorandum* (JN) |
| 04/21/2022 | | RECEIVED: Response by Petitioners *to the Secretary's April 11, 2022, Supplemental Memorandum*--[Edited 04/22/2022 by PTD] (JN) |
| 04/26/2022 | | PER CURIAM ORDERED that petitioners' April 21, 2022, motion is granted. And it is further ORDERED that the Clerk of the Court docket petitioners' April 21, 2022, reply as filed as of the date of this order. (ALLEN, MEREDITH and LAURER) (AMN) |
| 04/26/2022 | | Petitioners' response to Respondent's 04/11/2022 Supplemental Memorandum (AMN) |
| 08/08/2022 | | Notice or other pleading by Petitioners - *Solze Notice* (JN) |
| 08/19/2022 | | PER CURIAM: ORDERED that within 20 days of the date of this order counsel for petitioner J. Roni Freund provide a copy of her death certificate and show cause why her petition should not be dismissed. (ALLEN, MEREDITH and LAURER) (JM) |
| 09/08/2022 | | Response by Petitioners *to Court Order Dated August 19, 2022* (JN) |
| 09/14/2022 | | Motion of Petitioner to substitute party (JN) |
| 09/14/2022 | | Fee Agreement (JN) |
| 09/19/2022 | | PER CURIAM: ORDERED that, by the end of the day on September 28, 2022, the Secretary respond to the motion to substitute in accordance with the Court's Rules. See U.S. VET. APP. R. 27(b)(1). (ALLEN, MEREDITH and LAURER) (JM) |
| 09/22/2022 | | Notice or other pleading by Petitioner - *Solze Notice (grant of agency-level substitution)* (JN) |
| 09/27/2022 | | Response by Respondent *to the Court's September 19, 2022, Order* (AY) |
| 10/12/2022 | | PER CURIAM ORDERED that Mark Freund's motion for substitution is granted. It is further ORDERED that the Clerk of the Court change the caption of this matter to reflect that Mark Freund is now the |

| | | |
|---|---|---|
| | | petitioner in place of J. Roni Freund.(ALLEN, MEREDITH and LAURER)--[Edited 10/12/2022 by BB] (BB) |
| 10/20/2022 | | ORDERED that petitioners' Request for Class Action and Class Certification is DENIED. And it is further ORDERED that the petition is DISMISSED. ALLEN, Judge, filed the opinion of the Court. (ALLEN, MEREDITH and LAURER) (JM) |
| 11/14/2022 | | Judgment (JM) |
| 01/06/2023 | | Petitioner's Notice of Appeal to the U.S. Court of Appeals for the Federal Circuit--[Edited 01/09/2023 by JM] (JN) |
| 01/10/2023 | | Petitioner's Notice of Appeal transmitted to U.S. Court of Appeals for the Federal Circuit (JM) |

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-4168

MARK FREUND AND MARY S. MATHEWSON, PETITIONERS,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before ALLEN, MEREDITH, and LAURER, *Judges*.

**O R D E R**

ALLEN, *Judge*, filed the opinion of the Court.

Mark Freund is the brother of J. Roni Freund, who served the Nation in the United States Army.[1] Mary S. Mathewson is the surviving spouse of Marvin Mathewson, who also served the Nation in the Army. While there is no relationship between Ms. Freund and Mrs. Mathewson, they do have something in common. Each had an appeal pending before VA concerning a claim for benefits. Each timely sought review before the Board of Veterans' Appeals. And each had their appeals closed because VA mistakenly thought they had not perfected their appeals to the Board.[2] So, they joined together to petition the Court to rectify the Agency's errors. And they sought to represent a class of similarly situated claimants.

A bit more context is useful at this point to set the stage. There are currently two types of adjudicatory systems for claims within VA: Claims that are subject to the legacy appeals system and claims that are subject to the Veterans Appeals Improvement and Modernization Act of 2017 (AMA). The legacy appeals system applies to cases in which a VA agency of original jurisdiction (AOJ) issued the initial decision before February 19, 2019.[3] The appeals that led to the petition in

---

[1] Ms. Freund was one of the two original petitioners in this action. Unfortunately, she passed away on July 7, 2022, after this matter had been submitted for decision. Ms. Freund's brother, Mark Freund, moved to be substituted as a petitioner in his sister's place. The Secretary recognized Mr. Freund as a proper substitute to continue his sister's pending claims at the Agency and thus did not oppose the motion. On October 12, 2022, the Court granted Mr. Freund's motion to be substituted as a petitioner. For ease of reference, we will generally refer to Ms. Freund as a petitioner, although, as we have explained, Mr. Freund has been substituted in her place.

[2] As we will explain below, technically Mrs. Mathewson did not have her own appeal closed. Rather, she substituted into an administrative appeal of her husband after he passed away. It was his appeal that was closed. This distinction is not material to our consideration or decision of this matter. So, for the sake of readability, we will generally refer to Mrs. Mathewson as if she had been in the position of her husband before his death (as we have done in the paragraph above).

[3] 38 C.F.R. § 3.2400(b) (2022).

this case are subject to the legacy appeals system because each petitioner's administrative appeal originated from an AOJ decision that was issued before that date.[4]

Under the legacy system, when a claimant is dissatisfied with some aspect of a decision rendered by a VA AOJ, he or she may initiate appellate review of that decision by submitting a Notice of Disagreement (NOD) within one year of the decision at issue.[5] If a claimant submits a timely NOD, VA prepares a Statement of the Case (SOC) that provides information to the claimant concerning the arguments, evidence, issues, applicable laws and regulations, and AOJ determinations of the claimant's claim(s) so that the claimant can prepare an effective appeal before the Board.[6] If a claimant wishes to perfect an appeal to the Board, he or she must submit a VA Form 9, the "Substantive Appeal," within 60 days after the date on which VA transmits the SOC or within one year of the date of mailing of the notification of the VA decision being appealed, whichever is later.[7] And when a claimant submits a timely Substantive Appeal, VA must certify the case to the Board.[8]

The Veterans Appeals Control and Locator System (VACOLS) is an automated electronic database that tracks and monitors VA legacy appeals and records details of those appeals, such as the filing date of appellate documents and issuances of decisional documents.[9] VACOLS has a "sweeping" function through which VA automatically closes legacy appeals on the first day of the month following 65 days after an SOC has been mailed or following one year after notice of the AOJ decision was mailed if VACOLS does not reflect that a claimant has submitted a Substantive Appeal.[10] When VA sends a claimant an SOC, VA also informs the claimant of the 60-day deadline to file a Substantive Appeal to perfect an appeal and that if the claimant does not file a Substantive Appeal, the appeal will be closed.[11] However, VA does not give notice to a claimant when his or her appeal is closed "for failure to respond to [an SOC] within the period allowed" as a result of the VACOLS sweep.[12]

---

[4] Petition (Pet.) at 15 (Ms. Freund received a rating decision for her claim in March 2017), 16 (Mrs. Mathewson's rating decision was issued in June 2016).

[5] 38 U.S.C. § 7105(b)(1).

[6] 38 C.F.R. § 19.29 (2022).

[7] 38 C.F.R. § 19.52(b)(1) (2022) ("[A] Substantive Appeal must be filed within 60 days from the date that the [AOJ] mails the [SOC] to the appellant, or within the remainder of the 1-year period from the date of mailing of the notification of the determination being appealed, whichever period ends later."); *see* 38 C.F.R. § 19.22 (2022) ("A Substantive Appeal consists of a properly completed VA Form 9, 'Appeal to Board of Veterans' Appeals,' or correspondence containing the necessary information.").

[8] *See* 38 C.F.R. §§ 19.35 (2022), 19.52(b)(1).

[9] 68 Fed. Reg. 69,062, 69,064 (Dec. 11, 2003) (proposed rule); VA APPEALS AND REVIEWS MANUAL (M21-5), ch. 6, sec. A.

[10] M21-5, ch. 6, sec. B.4.b; Secretary's (Sec'y's) Response (Resp.) to Pet. at 17 (citing Sec'y's Resp. to Pet., Exhibit (Ex.) 16).

[11] Sec'y's Resp. to Pet. at 17 (citing Sec'y's Resp. to Pet., Ex. 16); *see* M21-5, ch. 6, sec. B.3.c; M21-5 ch. 7, sec. D.3.h.

[12] 38 C.F.R. § 19.32 (2022).

Petitioners allege that VA inappropriately closed their legacy appeals—for which they submitted timely Substantive Appeals—without notice, due to VACOLS's automated closure function. On behalf of themselves and a class of similarly situated claimants, petitioners request that the Court, among other things, order VA to reopen the closed appeals and (1) declare VA's actions concerning the erroneous closures of appeals with timely filed Substantive Appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); and (2) declare that the no-notice element of VA's closures of such appeals violates 38 C.F.R. § 19.32 and principles of fair process.

There is much about this case that we find troubling. To be clear, the issue is not that VA has leveraged technology by using VACOLS to manage the appeals process. Done right, such an approach is laudable. The problem is that it became clear during the course of these proceedings that VA knew that there were claimants whose claims had been erroneously closed through the use of the VACOLS sweeping function. VA maintained that this was not really a problem because as soon as VA learned of an erroneous closing, it would automatically reactivate the appeal at issue. But there did not appear to be any comprehensive plan for identifying such claimants, a problem magnified by the lack of notice of the closing in the first place. And, as we will discuss below, the Secretary came perilously close to misleading the Court by suggesting that he was engaged in proactive steps to address the problem such that it negated any need for the Court's intervention. That was clearly not so, but it took the Court's sustained efforts over many months of inquiries as to whether this action is moot to have the Secretary admit as much. To the Secretary's credit, and as we also describe below, after oral argument the Secretary informed the Court of plans to address the issue, suggesting that the Agency had finally begun to meaningfully grapple with the serious problem this action had brought to light. We trust the Secretary will continue to follow through with the plans he presented to the Court.

Despite our concerns about the issues petitioners raise and the significance of the matters before the Court, we conclude that we must dismiss this action. As a roadmap, the order proceeds as follows: First, we provide background information about petitioners' claims at the Agency and before the Court as well as the course of proceedings in this matter. Second, we briefly discuss our statutory jurisdiction to act. Third, we address standing and mootness as applicable to the facts before us. With respect to the petitioners' individual claims, we explain why they are largely moot and otherwise that petitioners lack standing to seek the individual relief they ask the Court to award. We then explain that it would be possible for this action to continue under an exception to the mootness analysis concerning class action claims—the inherently transitory exception to mootness. However, finally, we conclude that the inherently transitory exception does not prevent dismissal here because it is inappropriate to certify the class petitioners have proposed. Therefore, we will deny class certification and also dismiss this action.

# I. BACKGROUND

## A. Petitioners' Procedural History Before VA

As we noted, petitioners were two unrelated individuals who both timely submitted Substantive Appeals for their legacy appeals that VA did not promptly certify to the Board.[13] Ms. Freund was an Army veteran who had filed a disability claim for entitlement to service connection for PTSD; an RO denied her claim in March 2017, and Ms. Freund timely filed an NOD.[14] This led to a January 25, 2020, SOC that continued the denial of Ms. Freund's claim for service connection for PTSD.[15] In response to the SOC, Ms. Freund timely filed a Substantive Appeal on March 13, 2020.[16] VA received the Substantive Appeal on the same date.[17] As we will explore in a moment, Ms. Freund's appeal was deactivated when VACOLS determined (erroneously) that she had not submitted a Substantive Appeal.[18] As we noted above, after her death, we granted Mark Freund's motion to be substituted in his sister's place as a petitioner in this action.

Mrs. Mathewson is the surviving spouse of Army veteran Marvin Mathewson. Mr. Mathewson filed a claim in the legacy appeals system for special monthly compensation based on the need for aid and attendance.[19] An RO denied his claim in a June 2016 rating decision.[20] In January 2017, Mr. Mathewson timely filed an NOD concerning the June 2016 rating decision.[21] In response, VA issued an SOC on October 11, 2017, continuing the denial of the claim.[22] On December 4, 2017, Mr. Mathewson timely filed a Substantive Appeal.[23] Unfortunately, he passed away in December 2020.[24] In June 2021, Mrs. Mathewson sought to be substituted into her late husband's administrative appeal.[25] VA granted the request in July 2021.[26] As with Ms. Freund's

---

[13] As noted earlier, in cases in which a VA AOJ, such as a regional office (RO), issued the initial decision that led to an administrative appeal before February 19, 2019, the legacy appeals system applies. 38 C.F.R. § 3.2400(b).

[14] Pet. at 15; *see* Pet. Ex. P-3, Appendix (App.) at 14.

[15] Pet. at 15 (citing Pet. Ex. P-3, App. at 10-38).

[16] *Id.* (citing Pet. Ex. P-4, App. at 39-41).

[17] *Id.*

[18] Pet. at 15 (citing Pet. Ex. P-5, App. at 42-44); Oral Argument (O.A.) at 39:39-43:34, *Freund v. McDonough*, U.S. Vet. App. No. 21-4168 (oral argument held Feb. 10, 2022), http://www.uscourts.cavc.gov/documents/Freund.MP3.

[19] Pet. at 16 (citing Pet. Ex. P-10, App. at 55-67).

[20] *Id.* (citing Pet. Ex. P-11, App. at 70-71, 77-84).

[21] *Id.* (citing Pet. Ex. P-12, App. at 96-118).

[22] *Id.* (citing Pet. Ex. P-13, App. at 119-34).

[23] *Id.* (citing Pet. Ex. P-15, App. at 145, 147-49).

[24] *Id.* (citing Pet. Ex. P-9, App. at 53-54).

[25] Pet. at 17 (citing Pet. Ex. P-17, App. at 160-61).

[26] Sec'y's Resp. to Pet. at 3 n.1 (citing Sec'y's Resp. to Pet. Ex. 10).

appeal, the appeal into which Mrs. Mathewson had been substituted had also been erroneously closed when VACOLS determined that the veteran had not submitted a Substantive Appeal.[27]

## B. VACOLS and Petitioners' Claims

VACOLS is a computerized, automated system in which VA tracks and monitors activity within legacy appeals.[28] Certain status codes are used to reflect a corresponding action in VACOLS,[29] and VA employees must "update all applicable VACOLS fields when action is taken on an appeal."[30] When an RO receives a valid and timely NOD from a claimant, VA will create an appeal record within VACOLS.[31] In response to the NOD, VA will issue an SOC if VA decides to continue a denial on a claim.[32] Under procedures the Agency has adopted, if VA receives a timely Substantive Appeal in response to the SOC from the claimant, VA must record the receipt of the Substantive Appeal in VACOLS.[33] VA must also update VACOLS for the subsequent tracking activity of a Substantive Appeal.[34] Once VA enters the date it receives the Substantive Appeal into VACOLS, this action is supposed to officially place the appeal on the Board's docket.[35] This information is also recorded in the Veterans Benefits Management System (VBMS) where an end product is established for the Substantive Appeal.[36] If VA does not receive a Substantive Appeal, at all or on time, VA will automatically close an appeal in VACOLS on the first day of the month

---

[27] Pet. at 16 (citing Pet. Ex. P-16, App. at 155-57).

[28] M21-5, ch. 6, sec. A.1.a ("[ROs] use VACOLS to track legacy appeals, i.e. disagreements to RO decisions made before February 19, 2019.").

[29] *See, e.g.*, M21-5, ch. 6, sec. A.1.c ("When . . . the Board has completed action on an appeal[,] [t]hen VACOLS shows . . . history status (HIS).").

[30] M21-5, ch. 6, sec. A.1.d. VACOLS fields that must be updated include items such as dates, Board hearing options, and diaries for pending actions. *Id.*

[31] VA OFF. OF INSPECTOR GEN., OFF. OF AUDITS & EVALUATIONS, VETERANS BENEFITS ADMINISTRATION REVIEW OF TIMELINESS OF THE APPEALS PROCESS 1-2 (Mar. 28, 2018), https://www.oversight.gov/sites/default/files/oigreports/VAOIG-16-01750-79.pdf.

[32] *Id.* at 2.

[33] M21-5, ch. 6, sec. B.4.a.

[34] *Id.*, ch. 6, sec. B.4.d.

[35] VA OFF. OF INSPECTOR GEN., OFF. OF AUDITS & EVALUATIONS, VETERANS BENEFITS ADMINISTRATION REVIEW OF TIMELINESS OF THE APPEALS PROCESS 2 (Mar. 28, 2018), https://www.oversight.gov/sites/default/files/oigreports/VAOIG-16-01750-79.pdf.

[36] M21-5, ch. 6, sec. B.4.c. VA has described an end product as "the primary workload monitoring and management tool for the [Veterans Service Center]." VA OFF. OF INSPECTOR GEN., OFF. OF AUDITS & EVALUATIONS, INSPECTION OF THE VA REGIONAL OFFICE NEW ORLEANS, LOUISIANA 11 (Aug. 17, 2017), https://www.oversight.gov/report/va/inspection-va-regional-office-new-orleans-louisiana (last visited June 4, 2022). It is a tool to track claims. An RO inputs claims and issues under end product controls when those claims or issues are received. VA MANPOWER CONTROL AND UTILIZATION IN ADJUDICATIVE DIVISIONS MANUAL (M21-4), ch. 4, sec. 4.3.a. End products are associated with claim labels, which "provide a more specific description of the claim type that a corresponding end product . . . represents." M21-4, App. C, sec. C.1.a.

following 65 days after an SOC is issued or one year following the notification date of an AOJ decision, whichever is later.[37]

It is undisputed that petitioners timely filed their Substantive Appeals; yet VACOLS did not capture the timely filing of their Substantive Appeals.[38] Thus, petitioners' appeals were closed in the VACOLS system and not certified to the Board. The Secretary characterizes the premature or erroneous closure of these appeals as "human error," but we don't know exactly what human error happened that led to VA "not properly identif[ying]" the Substantive Appeals at the time they were received by VA.[39] However, we do know that the closings were based on the running of the VACOLS sweeping function.[40] As a result of these erroneous closings, VA took no action on petitioners' appeals until VA reactivated them in July 2021.[41] The Secretary's counsel stated at oral argument that petitioners' appeals were reactivated as a result of "VA's established policy to reactivate" appeals VA learns were wrongly closed.[42] Of course, absent further explanation from the Secretary, it appears that VA only learned of the wrongful closure of petitioners' appeals as the result of the filing of this action.

C.  Petition and Request for Class Action

In their petition, petitioners argue that VA inappropriately closed their legacy appeals due to the automated sweeping function in VACOLS. They request that the Court: (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process; (3) order the Secretary to reactivate petitioners' appeals within 30 days; (4) retain jurisdiction over this case until the Secretary complies with the Court's order; and (5) order any such other relief as appropriate.[43]

We pause to address a procedural wrinkle concerning the petition. Petitioners filed this petition jointly. They recognized the Court's rules did not expressly allow such joint filings, but argued that we should allow them to proceed together.[44] In a November 2021 order, the Court directed the Secretary to address whether he opposed the joint filing of the petition.[45] The Secretary

---

[37] M21-5, ch. 6, sec. B.4.b; Sec'y's Resp. to Pet., Ex. 17.

[38] *See* Sec'y's Resp. to Pet. at 2 (noting that Ms. Freund and Mr. Mathewson had each perfected their appeals prior to the closure in VACOLS).

[39] Sec'y's Resp. to Court's Nov. 29, 2021, Order at 12; *see* Sec'y's Resp. to Pet. at 19.

[40] Sec'y's Resp. to Pet. at 2; O.A. at 39:39-43:34.

[41] Sec'y's Resp. to Pet. at 2-3; *id.*, Ex. at 3, 11.

[42] O.A. at 1:17:04-:23.

[43] Pet. at 2-3.

[44] *Id.* at 2 n.1.

[45] Nov. 29, 2021, Court Order at 1-2.

responded that he did not oppose petitioners' joint filing of their claims.[46] Given the Secretary's acquiescence in petitioners' joint filing, as well as our resolution of this matter in this order, we will proceed on the basis that joinder was proper here. We stress, however, that nothing in this order should be taken as adopting a particular test for determining when joinder is appropriate.

Along with their joint petition, petitioners also filed a request for class action and class certification (RCA). They sought certification of a proposed class consisting of:

> All claimants with a timely perfected legacy appeal: (1) that is an original appeal,[47] (2) that the Secretary has closed, (3) that remains closed, (4) that appears in VACOLS, (5) for which a copy of the [S]ubstantive [A]ppeal appears in VBMS,[48] and (6) for which VA has not issued a rating decision regarding the [S]ubstantive [A]ppeal's timeliness.[49]

In support of the RCA, petitioners assert that they are seeking resolution of common legal issues, including whether "(1) by erroneously closing a timely perfected legacy appeal—and in turn withholding all action on it—the Secretary is unlawful[ly] withholding agency action; and (2) withholding [N]otice of the [A]ppeals' closures[] violates 38 C.F.R. § 19.32 and [f]air [p]rocess."[50] They requested on behalf of the class in part that the Court "deem the Secretary's withholding of action on the proposed [c]lass members' timely perfected legacy appeals to constitute agency action 'unlawfully withheld'" and declare that "the no-notice element of the Secretary's closure of the proposed [c]lass members' timely perfected legacy appeals violates 38 C.F.R. § 19.32 and [f]air [p]rocess."[51]

We ordered the Secretary to respond to both the petition and the RCA and allowed petitioners to file replies as to both matters. Based on the Secretary's initial responses to the petition and RCA it was unclear to the Court what actions the Secretary had taken to identify other administrative appeals, aside from petitioners', in which legacy appeals were prematurely closed. In that regard, the Secretary's response to the petition seemed to suggest that he was engaged in such efforts by asserting that he had "been proactively and successfully working to identify cases

---

[46] Sec'y's Resp. to Court's Nov. 29, 2021, Order at 1, 3-4 (explaining that petitioners meet the standards described in Rule 20 of the Federal Rules of Civil Procedure and *Monk v. Shulkin*, 2018 U.S. App. Vet. Claims LEXIS 61, No. 15-1280 (Jan. 23, 2018) (en banc order), because petitioners' claims arise out of the same transaction of VA closing their appeals in VACOLS, and petitioners share the common question of whether VA wrongfully closed their appeals despite timely submission of their Substantive Appeals).

[47] RCA at 8. Petitioners refer to original claimants or, if the original claimant is deceased, an individual eligible to substitute for the original claimant under 38 U.S.C. § 5121A. *Id.* at 9. They also specify that "original appeal" is one that the Board has not previously remanded. *Id.*

[48] Petitioners indicate "closed" to mean that VACOLS designates that the appeal's status is "HIS" meaning "history." *Id*. at 9. M21-5, ch. 6, sec. B.4.b explains that "[i]f a [S]ubstantive [A]ppeal is not timely input, the VACOLS record will automatically close and show a status of history (HIS)."

[49] RCA at 8.

[50] *Id.* at 13.

[51] *Id.* at 28.

where an appeal was prematurely closed despite a timely VA Form 9 having been filed, and to reactivate those appeals."[52]

On November 29, 2021, we ordered the Secretary to provide additional information and a more detailed explanation concerning his alleged identification of cases that were prematurely closed despite a timely Substantive Appeal being filed. We specifically asked the Secretary to explain what he meant when he stated that he has been "proactively" working to identify such appeals.[53]

In response to the Court's November 2021 order, the Secretary stated that VA "proactively and successfully identifies VA Form 9s and activates appeals in VACOLS if they are prematurely closed" through various procedures implemented within VACOLS and VBMS.[54] The Secretary explained that since the findings of a March 2018 VA Office of Inspector General (OIG) report, VA has amended its procedures to improve its identification and tracking of timely filed Substantive Appeals. First, the Secretary laid out the end product framework that he implemented during the investigation that led to the March 2018 OIG report.[55] This revised framework was effective May 15, 2017.[56] VA established end product and claim label schemes to track and monitor legacy appeals through both VACOLS and VBMS.[57] Second, the Secretary described the initial mail intake process in which VA identifies Substantive Appeals and updates VACOLS and VBMS thereafter,[58] noting the different possible reasons an appeal may be improperly closed despite a timely Substantive Appeal submission.[59] Third, and distinct from the initial mail intake process, the Secretary explained that a multiple-review process takes place at certain points of VA claims adjudication: (1) a veterans service representative reviews a claims folder when developing evidence, (2) a rating veterans service representative reviews the claims folder when rendering a decision, and (3) another veterans service representative reviews the claims folder when authorizing an award.[60] Finally, the Secretary explained that VA routinely administers monthly and annual national-level quality control reviews of a sample size of claims to identify errors

---

[52] Sec'y's Resp. to Pet. at 19; *see* Secretary's Response to Request for Class Action at 10 ("[T]he Secretary already has an established process in place for proactively and successfully identifying prematurely closed appeals and reactivating those appeals."), 13 ("[T]he Secretary has been proactive in correcting each case where an appeal was prematurely closed.").

[53] Nov. 29, 2021, Court Order at 2.

[54] Sec'y's Resp. to Court's Nov. 29, 2021, Order at 12.

[55] *Id.* at 7.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 8-9.

[59] *See id.* at 9-10. The Secretary asserts that delays in processing a timely VA Form 9 may be due to: submission of the VA Form 9 close to expiration of the 60-day period for perfecting an appeal, delays in the physical mailing of a timely post-marked VA Form 9, a VA Form 9 being sent to the wrong VA office before being rerouted to the correct VA office, and human error.

[60] *Id.* at 11.

within those individual claims.[61] The Secretary stated that these procedures constitute the steps VA has taken to "proactively and successfully [identify] VA Form 9s and [reactivate] appeals in VACOLS if they are prematurely closed."[62]

The Court held oral argument on February 10, 2022. During oral argument, the Court posed several questions to the Secretary's counsel for which counsel either did not have a response or provided responses that were unclear.

First, the Court asked the Secretary's counsel to clarify VA's "proactive" actions concerning identification of inappropriately closed Substantive Appeals. [63] He stated that "the term 'proactively' in [his] initial response" refers to "VA's normal operating procedures" to identify Substantive Appeals that were previously filed with which a prematurely closed appeal is associated. [64] Then, the Secretary's counsel answered in the affirmative that VA was doing something independent of addressing this petition to identify cases in which claimants had their appeals inappropriately closed.[65] However, when asked again whether VA had been investigating whether other appeals were inappropriately closed and had not been reactivated, the Secretary's counsel responded that VA does not have procedures "for the sole purpose of identifying, if in a claims file, a missed VA Form 9 is present."[66] The Secretary's counsel stated that VA's intake procedures are designed to ensure that appeals are not deactivated in error and that the Agency reactivates appeals on an ongoing basis when it comes to VA's attention that an appeal has been inappropriately closed.[67] After all of this, however, it was still unclear to the Court whether the Secretary was, at that time, doing anything with respect to the reactivation of prematurely closed appeals that could legitimately be termed "proactive" or if he had any plans to do so and it was thus equally unclear whether the RCA was moot, as the Secretary suggested at oral argument.[68]

Next, during oral argument, the Court referenced a statement in a March 2018 OIG report concerning VA's anticipated future actions related to the issues the OIG had identified about VA's appeals processing procedures. Specifically, the Court asked the Secretary's counsel to explain, with respect to VA's response to a recommendation by the OIG concerning error reduction in closing VACOLS records, what VA meant by the language "[VA] [was] in the process of updating the pre-site visit protocol, to include a review of closed appeals."[69] The Secretary's counsel

---

[61] *Id.* at 12.

[62] *Id.*

[63] O.A. at 43:37-45:40.

[64] *Id.* at 47:47-48:19.

[65] *Id.* at 48:59-50:19.

[66] *Id.* at 52:54-53:22.

[67] *Id.* at 59:26-:49.

[68] "Proactive" is "acting in anticipation of future problems, needs, or changes." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/proactive (last visited July 26, 2022).

[69] O.A. at 53:22-:50; *see* Sec'y's Resp. to Court's Nov. 29, 2021, Order, Ex. 1 (Mar. 2018 OIG report) at 37 ("[OIG's] Recommendation 3: . . . implement a plan to amend Veterans Benefits Administration's procedures for closing appeals records to prevent appeals being closed prematurely.").

forthrightly responded that he did not know what the quoted statement referred to,[70] but he offered to provide a supplemental response to explain VA's efforts concerning this portion of the March 2018 OIG report.[71] Relatedly, when asked whether VA has done any research to determine the potential number of people whose appeals were erroneously closed, the Secretary's counsel responded that VA had not done so.[72]

Finally, the Secretary's counsel asserted that the "vast majority" of closed legacy appeals are properly closed because VA did not receive a Substantive Appeal.[73] Counsel did not explain the bases for this statement given that VA had not attempted to identify the appeals that have been closed in the first place.[74] The Court was unsure how VA could so assuredly say that the vast majority of closed legacy appeals were related to a lack of filing a Substantive Appeal if VA had not determined the quantity or scope of appeals that were improperly closed and remain closed.[75]

### D.   The Secretary's Post-Argument Actions

Following oral argument, the Court ordered the Secretary to file an affidavit or affidavits from senior VA officials addressing several matters that had been the subject of questioning at argument, particularly regarding the possible size of the proposed class and whether the RCA is moot. We largely quote our requests for information in full to provide some context for the true lack of clarity the Secretary provided at argument (as well as in his pre-argument submissions) about the scope of the problem at the heart of this petition:

1. Other than the estimates the Secretary provided in his previous briefing, what is the number of appeals, as of January 31, 2022, that remained closed in VACOLS and that had been closed since May 15, 2017, (i.e., the effective date in which VA revised its procedures by implementing a new end product structure [in VACOLS] according to the March 2018 OIG report) due to the alleged failure to file a Substantive Appeal, regardless of whether such an appeal ultimately is determined to be appropriately or inappropriately closed?

2. Of the appeals identified in response to Question 1 above, how many of those appeals do not show *any* activity associated with the claims file after the date of closure of the appeal?

3. Has VA sent a notice letter to either or both groups identified in response to Questions 1 and 2 above? If not, why is the Secretary contending that the request for class action is moot if VA has not taken steps to notify claimants that their appeals may have been prematurely closed?

---

[70] O.A. at 53:51-:56.

[71] *Id.* at 55:00-:12.

[72] O.A. at 55:46-56:22.

[73] O.A. at 1:01:34-:42.

[74] O.A. at 1:00:27-:48.

[75] O.A. at 55:45-56:22.

4. [Omitted]

5. In reference to Recommendation #3 of the March 2018 OIG report, VA explicitly stated that, with respect to error reduction in prematurely closed appeals through VACOLS, it "[was] in the process of updating the pre-site visit protocol, to include a review of closed appeals records." Other than the end product framework referenced in VA's response to Recommendation #3 and the procedures the Secretary previously provided in his briefings, precisely what programs, procedures, or other actions has VA implemented regarding reviewing closed appeals records based on VA's response to Recommendation #3 in the March 2018 OIG report? The response to this question must specifically address what is referred to as "a review of closed appeals records" in the OIG report.

6. In light of the petition and given the Secretary's knowledge of the appeals closure errors in this case, has the Secretary undertaken any actions, other than the procedures the Secretary provided previously in both his initial and supplemental briefings, to identify legacy appeals that have been inappropriately closed due to the failure to file a Substantive Appeal? Describe those actions in detail, including whether they were implemented before or after oral argument in this matter. If the Secretary has undertaken no actions to identify such appeals, explain why he is contending that the request for class action is moot. If he has undertaken any action to identify such appeals, what remedial plans does the Secretary have to address the issue concerning the inappropriately closed appeals of the identified claimants?[76]

The Secretary responded to our post-argument order on April 11, 2022. To begin with, the Secretary provided the Court with information concerning the number of inappropriately closed legacy appeals in the period between May 15, 2017, and January 31, 2022. From the pool of closed legacy appeals records during that time period, VA identified 5,456 legacy appeals in VACOLS and VBMS that were both closed and showed possible receipt of a Substantive Appeal.[77] And of those identified appeals, VA found that 3,806 of them were associated with a timely filed Substantive Appeal.[78] In other words, 69.8% of 5,456 closed legacy appeals with which a Substantive Appeal was filed were improperly closed.[79]

The Secretary also, really for the first time, fully acknowledged that his purportedly "proactive" steps to address the problem at the heart of this petition amounted to adopting certain procedures in response to the 2018 OIG report and reactivating appeals when VA learned of an inappropriate closure.[80] Indeed, the Secretary stated clearly that "*following oral argument before*

---

[76] Mar. 10, 2022, Court Order at 4-5 (emphasis in original; internal citations and footnotes omitted). Request #4 concerns a Freedom of Information Act request that is not relevant to the issues discussed in this order.

[77] Sec'y's Resp. to Court's Mar. 10, 2022, Order at 5, Ex. 1.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 6-7, Ex. 1 ¶ VI.

*the Court* on February 10, 2022, on March 18, 2022, [the Veterans Benefits Administration] began a focused review of legacy appeals that had been closed for failure to file a Substantive Appeal."[81] The Secretary also stated that, while VA did not plan to notify claimants whose legacy appeals were improperly closed, it would execute a plan to reactivate those closed appeals by the end of fiscal year 2022, and he continued to assert that the RCA is moot.[82]

As we alluded to above, the Court is grateful that the Secretary developed a plan to address the serious problem of having administrative appeals inappropriately closed, especially when no notice is provided of such closures. But we can't help but wonder what took the Secretary and his counsel so long to clearly explain what had been done to address the problem and, more importantly, what had not been done. Quite simply, it should not have taken multiple orders and the lengthy questioning of three Federal Judges at oral argument to have learned what the Secretary eventually told us in his April 11, 2022, submission.

With the background out of the way, we can turn to the substance of the petition and RCA.

## II.  JURISDICTION

We begin with jurisdiction. Of course, we must always assure ourselves that we have jurisdiction to act,[83] even though no one seriously questions that we have jurisdiction to consider the petition—or at least some aspect of it. Rather, the parties have jousted about the various bases on which our jurisdiction is based. Because the nature of the relief sought is critical to assessing our jurisdiction, we repeat what petitioners seek in this action. They ask the Court to: (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process; (3) order the Secretary to reactivate petitioners' appeals within 30 days; (4) retain jurisdiction over this case until the Secretary complies with the Court's order; and (5) order any such other relief as appropriate.[84]

There is no doubt that we may consider this matter under the rubric of the All Writs Act (AWA) with respect to petitioners' claims that VA had (at the time of the filing of the action)

---

[81] *Id*. at 5 (emphasis added).

[82] Sec'y's Resp. to Court's Mar. 10, 2022, Order at 4-6, Ex. 1. For completeness sake, we note that we granted petitioners' motion to file a reply to the Secretary's response to our order. Petitioners took issue with the Secretary's assertion that VA's actions since March 10, 2022 (e.g., VA's review and subsequent identification of legacy appeals closed between May 15, 2017, and January 31, 2022) renders petitioners' RCA moot. Specifically, petitioners argue that despite VA's actions since March 2022 in connection with the Court's March 2022 order, the Secretary still has not provided relief to the proposed class members VA identified and therefore petitioners' RCA is not moot. Petitioners' Resp. to Sec'y's Resp. to Court's Mar. 10, 2022, Order at 2-8. We will return to the question of mootness of the RCA given the Secretary's post-argument actions below. To preview, the Secretary's actions have not mooted our consideration of the RCA.

[83] *See Foster v. McDonough*, 34 Vet.App. 338, 351 (2021); *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019) (per curiam order); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

[84] Pet. at 2-3.

wrongfully closed their appeals. The AWA provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[85] Our jurisdiction is tied to final Board decisions.[86] It is well established that, functionally, a writ would be in aid of our jurisdiction if it is "to remove obstacles to appeal."[87] Also, the AWA "'extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected.'"[88] Or as the Court recently characterized the issue, the AWA provides the authority to act "in aid of our *prospective* jurisdiction, where 'an alleged refusal to act would forever frustrate the ability of [this Court] to exercise its appellate jurisdiction.'"[89]

Here, petitioners' claims concerning the inappropriate closing of their administrative appeals fall comfortably within the ambit of the AWA. Considering that their appeals were closed in the VACOLS system despite the timely filing of their Substantive Appeals, the Board would not render a decision on those appeals. And if that were so, we could never exercise our jurisdiction because there would be no final Board decision for us to review. This is a far cry from arguments amounting to mere speculation or proposed hypothetical situations that would not support proceeding under the AWA.[90] In fact, the scenario before us concerning the erroneously closed appeals is precisely the type of situation the AWA was designed to rectify.

There are two requests for relief that, at least in part, don't fit so comfortably within the AWA framework: petitioners' request for the Court to (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); and (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process.[91] As to the first request, it too is comfortably within the AWA *if* petitioners meant it to support their claim that the Court should order their appeals reactivated. However, to the extent petitioners seek an order concerning the future consequences of any past inappropriate closure,[92] we will explain below that this claim is speculative and, therefore, they lack standing to seek this relief. As to the second request concerning the "no notice" feature of the closings, petitioners also lack standing to bring this claim for relief because, at the time they filed this action, they had notice of the closing of their appeals and, to the extent they claim they might be harmed in the future because of the lack of notice, that claim is as speculative as the first one concerning harm from the inappropriate closings. The

---

[85] 28 U.S.C. § 1651(a); *see Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017); *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 54-55 (2020), *aff'd without opinion sub nom. Gardner-Dickson v. McDonough*, 2021 U.S. App. LEXIS 33000 (Fed. Cir. Nov. 5, 2021).

[86] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[87] *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943).

[88] *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04 (1966)).

[89] *Love v. McDonough*, 35 Vet.App. 336, 342 (2022) (per curiam order) (emphasis in original) (quoting *Erspamer*, 1 Vet.App. at 8).

[90] *See id.*

[91] Pet. at 2-3.

[92] *See* Petitioners' Reply in Support of Pet. at 5-7 (discussing possible future harms related to loss of evidence).

bottom line is that we need not wrestle with a jurisdictional basis for these requests for relief because they are not properly before the Court based on a lack of standing.

As we said, the parties don't dispute that we could proceed under the AWA at least with respect to the request for reinstatement of the petitioners' appeals. And we agree. But in the interest of completeness, we acknowledge certain additional arguments petitioners advance concerning jurisdiction. Petitioners contend first that the Court has jurisdiction over their petition under 38 U.S.C. § 7252(c) in purported aid of the Federal Circuit's jurisdiction pursuant to 38 U.S.C. § 7292.[93] The Court recently expressly rejected this argument as a basis for our jurisdiction in the context of a petition.[94] So, we need say no more on that point. And petitioners argue that our authority under 38 U.S.C. § 7261(a)(2) to "compel action of the Secretary unlawfully withheld or unreasonably delayed" also has jurisdictional implications.[95] But, as we noted above and explain below, either the petitioners lack standing to make the remaining requests for relief, or those requests are moot. Moreover, even as to the claim properly asserted under the AWA, we'll explain why petitioners' requests for reinstatement of their appeals are moot as well, even though they presented a live controversy at the time the action was filed. Therefore, we need not resolve petitioners' arguments about the meaning of section 7261(a)(2) in the context of AWA petitions, and we leave them for another day.

### III. MOOTNESS AND STANDING

Just because we have subject matter jurisdiction to consider some aspect of the petition does not mean that we can necessarily reach the merits of any of petitioners' allegations. Before we can do so, we must address whether there are any claims that continue to present a live controversy over which we may exercise jurisdiction and, if there are such claims, whether petitioners can seek the relief they ask the Court to award.

This Court has adopted the case-or-controversy requirements of Article III of the Constitution of the United States.[96] These requirements include both standing and mootness.[97] To have standing, a party must demonstrate an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[98] In terms of mootness, as relevant here, when VA has provided the relief sought in a petition for extraordinary relief, the petition is moot as to that request for relief under case-or-controversy principles.[99] In that situation, the Court lacks jurisdiction and we must dismiss the

---

[93] Pet. at 3-11.

[94] *See Love*, 35 Vet.App. at 349-53.

[95] Pet. at 12-13.

[96] *Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014) (per curiam order); *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990).

[97] *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

[98] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

[99] *See Monk v. Wilkie*, 32 Vet.App. 87, 97 (2019) (en banc order), *aff'd in part, dismissed in part sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021); *Godsey v. Wilkie*, 31 Vet.App. 207, 218 (2019) (per curiam order); *Thomas*

action with respect to the relief VA has provided.[100] Petitioners can avoid dismissal under these circumstances only if there is some exception to mootness that would preserve the Court's jurisdiction to entertain a matter.

In this section, we first address petitioners' individual claims for relief in their petition. We conclude that petitioners' principal requests for relief are moot because VA has reactivated their administrative appeals. As to the other forms of individual relief petitioners request, to the extent they are not moot, we conclude petitioners lack standing to seek such relief. Second, we briefly explain why the Secretary's post-argument actions have not mooted the class claims and our consideration of the RCA. And finally, we turn to whether there is an exception to the mootness doctrine that would allow us to proceed to address the merits of the petition concerning the inappropriate closing of administrative appeals for the proposed class members despite the mootness of the named petitioners' individual claims. We conclude that there is such an exception—the "inherently transitory" exception to mootness that can apply in the context of a request for relief from the Court on a class action basis. However, that exception can only assist petitioners if certification of a class were appropriate here. The final section of this order explains why certification is not appropriate, thereby making the inherently transitory exception to mootness unhelpful to petitioners here.

A. Petitioners' Individual Claims for Relief: Mootness and Standing

In his October 2021 response to the petition, the Secretary argues that petitioners' claims are moot because VA has reactivated petitioners' administrative appeals.[101] Petitioners counter that their petition is not moot because they did not limit their requested relief to a reactivation of their appeals—pointing out that they also requested that the Court declare VA's actions of prematurely closing their appeals as agency action unlawfully withheld within the meaning of 38 U.S.C. § 7261(a)(2) and that VA's closure of their legacy appeals without notice violates 38 C.F.R. § 19.32 and fair process principles.[102]

Here, it is undisputed that VA has reactivated the administrative appeals of both petitioners.[103] Given this fact, petitioners have received the principal relief they sought: ordering the Secretary to reactivate their appeals within 30 days and our retaining jurisdiction until the Secretary does so.[104] Under these circumstances, the petition is moot as to these matters.[105]

---

v. Brown, 9 Vet.App. 269, 270 (1996) (per curiam order); Mokal, 1 Vet.App. at 15.

[100] See, e.g., Monk v. Wilkie, 32 Vet.App. at 98; Long v. Principi, 17 Vet.App. 555, 556-57 (2004) (per curiam order); Thomas, 9 Vet.App. at 270.

[101] Sec'y's Resp. to Pet. at 3-4, 11-12.

[102] Petitioners' Reply in Support of Pet. at 5.

[103] Sec'y's Resp. to Pet. at 2, 3.

[104] See Pet. at 2-3.

[105] See Monk v. Wilkie, 32 Vet.App. at 101; Godsey, 31 Vet.App. at 218; Thomas, 9 Vet.App. at 270; Mokal, 1 Vet.App. at 15.

That being said, petitioners are correct to the extent they point out that they have not received *all* the relief they sought. Specifically, petitioners also asked that we declare that the closing of their appeals was agency action unlawfully withheld under 38 U.S.C. § 7261(a)(2) and that the no-notice aspect of the closures violated 38 C.F.R. § 19.32 and fair process principles.[106] But, while not moot, because petitioners lack standing to seek this relief, the fact that VA has not provided such relief does not save their claims.

We conclude that petitioners lack standing to seek these unawarded remedies because they have not alleged a sufficient injury in fact in that the harms petitioners posit might occur in the future are speculative. Petitioners maintain that, as to them, the Court should declare that the closing of their appeals amounted to Agency action unlawfully withheld and that the no-notice aspect of the closures is unlawful because making these declarations could prevent prejudice in the adjudication of their administrative appeals in the future.[107] This type of hypothetical, future injury is insufficient to establish standing. As the Supreme Court has said, "we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not sufficient."[108] Indeed, that petitioner Mathewson has requested in her merits submissions that VA provide these heightened duties further buttresses that the alleged potential harm—possible difficulties in obtaining benefits due to VA's potential refusal to provide those duties—has not yet occurred.[109] Petitioners' request for us to address speculative harms runs afoul of the clear guidance from the Supreme Court. We reject their invitation to answer the hypothetical questions they pose.

## B. Alleged Mootness of RCA

As we discussed above, following oral argument in this matter, the Court ordered the Secretary to provide additional information about VA's practice of closing and not reactivating timely appeals that is at the heart of petitioners' claims. In response, the Secretary reported that he had undertaken (although belatedly) efforts to identify claimants who had been affected by the inappropriate closings of their administrative appeals.[110] And he also informed the Court that VA planned to "reactivate the legacy appeals records in VACOLS and take the appropriate next steps,

---

[106] *See* Pet. at 2. As we noted above, to the extent that petitioners' reference to agency action unlawfully withheld was merely to provide a legal basis upon which they argued the Court should order their administrative appeals reopened, the request for relief is moot because their appeals have been reactivated.

[107] *See* Petitioners' Reply in Support of Pet. at 5-7 (contending that such declarations could unlock heightened duties to assist and to consider the benefit of the doubt when VA adjudicates their appeals on the merits, which in turn could potentially assist them in obtaining benefits).

[108] *Clapper*, 568 U.S. at 409 (emphasis added and internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see Skaar v. Wilkie*, 32 Vet.App. 156, 173 (2019) (en banc order) ("Claimants cannot simply 'allege a bare procedural violation, divorced from any concrete harm' to satisfy the injury requirement." (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)), *vacated on other grounds sub nom. Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022).

[109] *See* Petitioners' Reply in Support of Pet., Ex. P-18 at App. 177-78.

[110] *See* Sec'y's Resp. to Court's Mar. 10, 2022, Order at 5.

to include notifying each appellant that their appeal was added to the Board's docket."[111] The Secretary then added that he "anticipates that these actions will be completed no later than the end of this fiscal year."[112]

In addition to providing the Court with the information about VA's planned approach to dealing with the inappropriately closed appeals, the Secretary also argued that his plan rendered consideration of the RCA moot.[113] The Secretary's position is puzzling. He seems to be suggesting that because he committed to addressing a problem, the Court is deprived of jurisdiction to consider the issue. But that is not how mootness works. As we discussed above with respect to the individual claims, when a defendant provides all the relief sought in an action, a court may lose adjudicative power due to mootness.[114] But that has not happened here with respect to the putative class. The Secretary has promised to act with respect to all those whose appeals have been inappropriately closed. But a promise to act and actually acting are different things. After all, in the mootness context, even when a defendant voluntarily ceases wrongful conduct—the equivalent of "fixing" a problem—a case is not moot unless there is no reasonable expectation that the wrongful conduct could resume.[115] And the Supreme Court has made clear, showing that is the case is a "formidable burden."[116] In sum, we reject the Secretary's suggestion that his promise to act with respect to the class moots our consideration of the RCA.

### C. The Inherently Transitory Exception to Mootness

Although mootness of a named party's claims generally bars Federal courts from reaching the merits of claims, the U.S. Supreme Court has applied certain exceptions to mootness in situations where a class representative's personal interest may have become moot but putative class members have live claims. In this regard, a plaintiff in a civil action who brings a purported class action presents two separate issues for judicial resolution: (1) "the claim on the merits" and (2) "the claim that [the plaintiff] is entitled to represent [as] a class."[117] So, a class representative may have her claim become moot, but the claim concerning the class may remain. Courts have referred to this doctrine in class actions as the "inherently transitory" exception to mootness.[118]

The Court in *Godsey* adopted the inherently transitory exception to mootness. We explained that an "inherently transitory" claim is one that is "unavoidably time-sensitive" and

---

[111] *Id.*

[112] *Id.*

[113] *Id.* at 4.

[114] *See, e.g.*, *Monk v. Wilkie*, 32 Vet.App. at 98; *Long*, 17 Vet.App. at 556-57; *Thomas*, 9 Vet.App. at 270.

[115] *See Friends of the Earth*, 528 U.S. at 189-90; *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

[116] *See Friends of the Earth*, 528 U.S. at 190.

[117] *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089 (9th Cir. 2011) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980)).

[118] *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Pitts*, 653 F.3d at 1091.

"'acutely susceptible to mootness'"[119] because a "trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires."[120] The Court of Appeals for the District of Columbia Circuit has noted that the standard of certainty for determining whether a claim is inherently transitory is relatively low; a "reasoned supposition" that a claim will not survive before a district court can reasonably be expected to rule on class certification makes that claim inherently transitory.[121]

Of course, we are bound by *Godsey*, which means that the inherently transitory exception to mootness could *possibly* allow us to reach the merits of the petition on a class basis *if* we could certify a class. And we will assume, without deciding, the class-claims here would qualify as ones that are inherently transitory. But we stress that petitioners can only benefit from this exception to mootness if the Court certifies a class. That is, if a class is not appropriate, an exception to mootness based on the existence of a class is irrelevant. As we explain next, certification of a class here is not appropriate and so the inherently transitory exception does not assist petitioners.

## IV. CLASS CERTIFICATION

Finally, we address petitioners' RCA. The "[p]rerequisites" for proceeding as a class action in this Court are:

(1) the class is so numerous that consolidating individual actions in the Court is impracticable;

(2) there are questions of law or fact common to the class;

(3) the legal issue or issues being raised by the representative parties on the merits are typical of the legal issues that could be raised by the class;

(4) the representative parties will fairly and adequately protect the interests of the class; and

(5) the Secretary or one or more official(s), agent(s), or employee(s) of the Department of Veterans Affairs has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other appropriate relief is appropriate respecting the class as a whole.[122]

---

[119] *Godsey*, 31 Vet.App. at 219 (citing *Pitts*, 653 F.3d at 1091).

[120] *Godsey*, 31 Vet.App. at 219 (quoting *Cnty. of Riverside*, 500 U.S. at 51-52).

[121] *J.D. v. Azar*, 925 F.3d 1291, 1310 (D.C. Cir. 2019).

[122] U.S. Vet. App. R. 23(a).

In addition to these five prerequisites, the Court also considers whether class-wide relief is "superior" to the resolution of a matter through a precedential decision.[123] In that regard, we have held that we "will presume classes should not be certified because our ability to render binding precedential decisions ordinarily will be adequate."[124]

Recall that petitioners propose representing a class they defined as follows:

All claimants with a timely perfected legacy appeal: (1) that is an original appeal, (2) that the Secretary has closed, (3) that remains closed, (4) that appears in VACOLS, (5) for which a copy of the [S]ubstantive [A]ppeal appears in VBMS, and (6) for which VA has not issued a rating decision regarding the [S]ubstantive [A]ppeal's timeliness.[125]

We conclude that certification of a class action in this matter is not appropriate on two alternate grounds. The first proceeds on the basis that petitioners' proposed class definition includes an implicit requirement that a class member have been subject to the closure of an administrative appeal without notice. In that case, the Court concludes that the named petitioners are not members of the class they seek to represent and are therefore inadequate representatives of such a class. The second ground takes the class definition literally—meaning there is no requirement that class members have been subject to no-notice closure. Proceeding under that assumption, the Court concludes that petitioners have not met their burden to present common questions capable of class-wide resolution. Under either view of the class definition, certification is not appropriate.[126] We will discuss each ground in turn.

A. Class Definition Implicitly Including No-Notice Requirement: The Named Petitioners are Not Adequate Class Representatives

While not expressly stated in the class definition, petitioners' briefing has made clear that their claims for class-wide relief are predicated, in part, on the fact that VA does not provide notice to claimants when their administrative appeals are closed because the VACOLS sweep indicates that no timely Substantive Appeal has been filed. Indeed, the RCA refers to that fact on no fewer than 12 pages.[127] As a prime example of the way in which the no-notice concept is woven into the fabric of petitioners' class claims, the heading petitioners used to argue that there are common issues among the class reads: "this action, *which seeks relief from the erroneous, no-notice closure of timely perfected appeals*, presents questions common to the class."[128] And, of course, one of petitioners' specific requests for class-wide relief is based on the unlawfulness of VA's no-notice

---

[123] U.S. Vet. App. R. 22(a)(3).

[124] *Skaar*, 32 Vet.App. at 196.

[125] RCA at 8.

[126] *Thompson v. Wilkie*, 30 Vet.App. 345, 346 (2018) (per curiam order) (stating that each of the Rule 23 elements must be met in order to justify class action certification).

[127] *See* RCA at 1, 6-7, 10, 13-17, 19, 26, 28; *see also* Petitioners' Reply in Support of RCA at 1, 4-5, 10, 12.

[128] RCA at 13 (capitalization altered; emphasis added).

policy.[129] So, it is difficult to see how the no-notice aspect of petitioners' claims is not part of the definition of the proposed class, even if implicitly so.[130]

Proceeding on this assumption concerning the implicit requirement of a lack of notice, a class action is not appropriate here. As discussed above, to the extent petitioners seek on behalf of the class a declaration that VA's no-notice policy violates § 19.32 or fair process, petitioners lack standing. Additionally, to the extent that they may have standing as to the additional relief sought—namely, reinstating the erroneously closed appeals and finding that VA is unlawfully withholding action—because petitioners are not members of the class they seek to represent, they are not adequate representatives of the class. The difficulty with any of petitioners' proposed pathways to relief is that both petitioners were made aware in 2020 that their appeals were closed.[131] So, at the time they filed this action, both petitioners knew of the erroneous closures of their respective timely filed legacy appeals. The fact that, at that time, they *knew* their legacy appeals were inappropriately closed in VACOLS is at odds with their class definition as we have construed it because once petitioners found out their legacy appeals were closed, they were no longer part of the class they sought to represent. Stated somewhat differently, the scope of the class is overbroad in the sense that for one to be a class member, a lack of notice of their closed appeal is implicitly required. And the definition that petitioners propose, as construed by the Court, is problematic because once a claimant does discover that his or her appeal has been closed, they have notice, and therefore, could not adequately represent a class seeking redress for lack of notice. What's more, the problem with petitioners' proposed class does not result from the Secretary's actions or the transitory nature of their claims. Petitioners simply were never members of the class they seek to represent because of the nature and implicit definition of the proposed class.

Our conclusion today on this point breaks no new ground in terms of class actions in Federal courts. The Supreme Court has made clear that when a putative class representative is not a member of the proposed class, and when, by the very definition of the class itself, there can be no class representative, certification is not appropriate.

In *Amchem Products, Inc. v. Windsor*,[132] the Supreme Court established that named representatives of an asbestos-litigation settlement class "'must be *part of the class* and possess the same interest and suffer the same injury as the class members.'"[133] The named representatives in *Amchem* could not be adequate class representatives due to two primary reasons. First, the class members had varying settlement interests from one another (e.g., based on the severity and/or presence of their injury, some class members desired *immediate* payments while others wanted

---

[129] *See* RCA at 28-29 (requesting that the Court find that the "no-notice element of the Secretary's closure of the proposed [c]lass members' timely perfected legacy appeals violates 38 C.F.R. § 19.32 and [f]air [p]rocess" and that notice be provided to the members of the class).

[130] *See Nehmer v. U.S Dep't of Veterans Affairs*, No. CV-86-06160, 2020 WL 6508529, at *5-6 (N.D. Cal. Nov. 5, 2020) (concluding that veterans who served off the shores of Vietnam were part of the class and entitled to class-wide relief even though the class definition and consent decree did not explicitly reference those veterans).

[131] O.A. at 18:56-19:22.

[132] 521 U.S. 591, 625-26 (1997).

[133] *Id.* at 625-26 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (emphasis added)).

inflation-protected future payments).[134] Second, the named representatives were an undivided set of individuals that sought to represent a class that not only had differing interests in the settlement, but also, unlike the named representatives, the class members hadn't yet filed a lawsuit against the defendants.[135] The Supreme Court in *Amchem* found it was necessary for the class to be divided into discrete subclasses.[136] And because no subclasses were established[137] and the undivided named representatives sought to represent "a single giant class" instead of discrete subclasses, the representatives could not adequately represent the class as a whole.[138] Put simply, the *Amchem* Court found that the representatives did not have the same injury or interests as the class they wished to represent because they did not share the same injuries or interests of the diverse class members.

As it did in *Amchem*, the Supreme Court in *Ortiz v. Fibreboard Corp.*[139] also found applicable the need for division of a class into subclasses and corresponding, separate representation for class representation in a settlement action under a limited fund theory.[140] Like in *Amchem*, an undivided group of named representatives sought to represent a class of individuals whose members differed in certain important respects. The class consisted of people who had incurred current asbestos-related injuries and those who hadn't yet sustained injuries but were exposed to asbestos.[141] The Supreme Court in *Ortiz* found that the varying presence of injuries (or lack thereof) within the class meant the members had differing interests in the settlement, and thus, separate representation among the class representatives as well as separate subclasses were necessary to eliminate conflicting interests of counsel.[142]

Of course, our case is distinguishable from *Amchem* and *Ortiz* for many reasons. But the fundamental logic of these decisions makes clear the basic, common-sense principle that class representatives must be members of the class they seek to represent when filing a request for class action. In addition, these decisions show that when the party proposing a class crafts a definition that makes it functionally impossible for anyone to serve as a class representative, class proceedings are not appropriate.[143] That is what we have here. As *Amchem* and *Ortiz* make clear, there are some problems that simply are beyond the scope of class consideration. This conclusion provides a basis upon which to deny petitioners' request to proceed on a class basis in this matter, based on a class definition that includes an implicit, no-notice requirement.

---

[134] *Id.* at 626.

[135] *Id.* at 602.

[136] *Id.* at 627.

[137] *Id.* at 603.

[138] *Id.* at 626-27.

[139] 527 U.S. 815 (1999).

[140] *Id.* at 856 (citing *Amchem*, 521 U.S. at 627).

[141] *Id.* at 856-87.

[142] *Id.* at 856 (citing *Amchem*, 521 U.S. at 627).

[143] *See Amchem*, 521 U.S. at 627 (upholding the Third Circuit's holding that class certification by the district court was improper, in part, because it failed the adequacy-of-representation requirements of Rule 23(a)).

B. Class Definition Not Including No-Notice Requirement: Lack of Commonality

Even if we approached the question of class certification by assuming that the proposed class does not include an implicit requirement of a lack of notice of the closing of an appeal and that petitioners could satisfy the prerequisite of adequacy, we would still find certification here unwarranted. This is so because that proposed class fails the requirement that "there are questions of law or fact common to the class."[144] We need not wade too deeply into the somewhat murky waters of assessing commonality.[145] As we will explain, we do not see this as a close case.

The Court's Rule 23(a)(2) is identical to the commonality requirement applicable to class actions in Federal district courts under Rule 23(a)(2) of the Federal Rules of Civil Procedure.[146] The Supreme Court has held that Rule 23(a)(2) under the Federal Rules of Civil Procedure requires a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[147] Importantly for operationalizing this significant requirement, the Supreme Court emphasized that "'[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"[148] Factual and legal differences among putative class members' claims are fatal to establishing commonality when those differences "'have the potential to impede the generation of common answers'" to the common questions said to unite the proposed class.[149]

Petitioners have failed to meet their burden to show that there are common answers to common questions going to the resolution of the action across the board.[150] They posit that the common questions here are whether "(1) by erroneously closing a timely perfected legacy appeal—and in turn withholding all action on it—the Secretary is unlawful[ly] withholding agency action; and (2) withholding notice of the appeals' closures[] violates 38 C.F.R. § 19.32 and [f]air [p]rocess."[151] However, we held above that the individual petitioners lack standing to seek Court declarations as to those two questions. And, "'standing cannot be acquired through the back door of a class action.'"[152] So, there must be something else that shows commonality. But petitioners have posed no other common question capable of class-wide resolution.

[144] U.S. Vet. App. R. 23(a)(2).

[145] *See, e.g.*, *Monk v. Wilkie*, 30 Vet.App. 167 (2018) (en banc) (competing opinions concerning application of commonality standard), *aff'd*, 978 F.3d 1273 (Fed. Cir. 2020).

[146] *Compare* U.S. Vet. App. R. 23(a)(2), *with* Fed. R. Civ. P. 23(a)(2).

[147] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see Monk v. Wilkie*, 978 F.3d 1273, 1277 (Fed. Cir. 2020).

[148] *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

[149] *Id*. (quoting Nagareda, *supra* note 148, at 132).

[150] *See Thompson*, 30 Vet.App. at 346.

[151] RCA at 13.

[152] *Skaar*, 32 Vet.App. at 173 (quoting *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part

Moreover, the fact that all the proposed class members would have to have had an administrative appeal closed due to a VACOLS sweep and have a *timely* Substantive Appeal on file is not enough to show commonality. That state of affairs may show that class members share a common characteristic. However, that feature does not establish that there is any common answer to a common question that will allow the Court to resolve the dispute "in one stroke."[153] Indeed, it is undisputed here that, if a claimant identifies a timely Substantive Appeal, VA will without further action by the claimant or the Court reactivate the appeal. In other words, there is no common question the common answer to which will allow the Court to grant or deny the precise relief petitioners seek—reopening of class members' appeals because the Agency has withheld action.[154] And because there is no such answer, there is no commonality.

\* \* \* \* \*

The bottom line is that no matter how we assess the class petitioners seek to represent in this action, certification is inappropriate. Either petitioners lack standing or they are not members of the class they seek to represent or, if they are, the class does not meet the commonality requirement. Either way of approaching this issue leads to the same result, our denial of the RCA.

## V. A CONCLUDING THOUGHT

As we noted at the beginning of our order, this is a troubling case. Perhaps with the best of intentions, VA has adopted a procedure utilizing technology to streamline the process of managing a crushing appeals workload. A byproduct of that procedure is that claimants who have validly perfected an administrative appeal have had their appeals inappropriately closed. And the Agency has not told these claimants about the closures so they could protest. Although we are unable to certify the class and are precluded from providing the relief petitioners seek given the limits on judicial authority, we are heartened that the Secretary appears to have recognized the seriousness of the situation and has undertaken steps to address the issues that led to the filing of this action.[155] As we noted, however, we are also deeply disappointed that it took the Secretary so long to acknowledge the problem this petition highlighted. But, as the saying goes, better late than never. We trust that the Secretary will proceed in executing the plan he proposed to correct the situation that has come to light through this proceeding. The Nation's veterans (and their dependents) deserve no less.

---

and dissenting in part)); *see id.* (holding that Mr. Skaar did not have standing to seek on behalf of the class an order that VA recognize Palomares as a radiation-risk activity where he argued that such relief would allow him to register for VA's Ionizing Radiation Registry but denial of such enrollment was not part of the proposed class definition).

[153] *Wal-Mart*, 564 U.S. at 350.

[154] Again, the no-notice arguments can't carry the day because we are assuming that the no-notice argument is not implicit in terms of class membership.

[155] Sec'y's Resp. to Court's Mar. 10, 2022, Order at 2-3.

## VI. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that petitioners' Request for Class Action and Class Certification is DENIED. And it is further

ORDERED that the petition is DISMISSED.

DATED: October 20, 2022

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**
625 Indiana Avenue, NW, Suite 900
Washington, DC 20004-2950

Date: January 10, 2023

Mr. Peter R. Marksteiner, Clerk
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

RE:     MARK FREUND, ET AL V. DENIS MCDONOUGH
OUR CASE NO. 21-4168

Dear Mr. Marksteiner:

Enclosed is a notice of appeal to your Court. It was filed by this Court on January 6, 2023. The judgment of this Court was entered on November 14, 2022.

A total of 53 days elapsed between judgment and filing of the appeal. Section 7292(a), Title 38, United States Code, requires that a notice of appeal of the decision of this Court be filed within the time prescribed for appeal to the United States courts of appeals from United States district courts, which is 60 days where the United States is a party.

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Jeffrey Messer
Deputy Clerk

Enclosures:        Notice of Appeal
Panel Opinion
Certified docket entries