IN THE
# United States Court of Appeals for the Federal Circuit

MARK FREUND, MARY S. MATHEWSON,

*Petitioners-Appellants,*

*v.*

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellee.*

On Appeal from the United States Court of Appeals for Veterans Claims
No. 21-4168, Judges Michael P. Allen, Amanda L. Meredith, and
Scott J. Laurer

## OPENING BRIEF OF PETITIONERS-APPELLANTS
## MARK FREUND AND MARY S. MATHEWSON

John D. Niles
Kenneth H. Dojaquez
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Jonas Q. Wang
Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Petitioners-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 23-1387

**Short Case Caption** Freund v. McDonough

**Filing Party/Entity** Mark Freund, Mary S. Mathewson

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/13/2023

Signature: /s/ Jonas Q. Wang

Name: Jonas Q. Wang

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Mark Freund | | |
| Mary S. Mathewson | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable            ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☑   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable            ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. vi

STATEMENT OF RELATED CASES ....................................................... xi

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT ........................................................... 5

STATEMENT OF THE ISSUES .............................................................. 5

STATEMENT OF THE CASE ................................................................. 6

    Petitioners Freund and Mathewson Seek the Benefits to
    Which They Are Entitled by Law. ..................................................... 6

    Petitioners' Claims Are Denied at the Regional Office and
    They Seek Review from the Board. ..................................................... 7

    Petitioners' Appeals Are Erroneously Closed by VACOLS. ............. 9

    Petitioners File Their Petition and Request for Class
    Certification And Class Action. ....................................................... 11

    The Veterans Court Denies Class Certification and
    Dismisses the Petition as Moot. ...................................................... 16

SUMMARY OF ARGUMENT ................................................................ 19

STANDARD OF REVIEW..................................................................... 22

ARGUMENT ..................................................................................... 23

    I.    The Veterans Court Erred in Dismissing The Petition........ 23

        A.    Petitioners Had Standing To Pursue Their Claims
            At The Outset Of The Action. ..................................... 24

        B.    Petitioners' Classwide Requests For A
            Determination Of Unlawfulness And Injunctive
            Relief Are Not Moot. .................................................. 34

    II.    The Veterans Court Erred In Denying Class
        Certification For Lack of Adequacy and Commonality. ........ 41

A.    Petitioners Meet The Adequacy Requirement. ........... 43

B.    Petitioners Meet The Commonality Requirement. ..... 51

C.    Petitioners Meet All Other Class Certification Requirements. .......................................................... 57

    1.    The class is sufficiently numerous. ................... 58

    2.    The legal issues Petitioners raise are typical of the class. ......................................................... 58

    3.    VA has acted and failed to act on grounds that apply generally to the class, so that injunctive and other relief is appropriate for the class as a whole. ............................................................. 59

    4.    Aggregate adjudication is superior to a precedential opinion. .......................................... 60

CONCLUSION ......................................................................... 62

ADDENDUM

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allee v. Medrano,*
416 U.S. 802 (1974) ............................................................. 54

*Alli v. Decker,*
650 F.3d 1007 (3d Cir. 2011) ...................................... 29, 30

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ..................................................... 48, 49

*Bryant v. Wilkie,*
33 Vet. App. 43 (2020) ....................................................... 31

*Cardona v. Shinseki,*
26 Vet. App. 472 (2014) ...................................................... 24

*Cnty. of Riverside v. McLaughlin,*
500 U.S. 44 (1991) ............................................................. 36

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper,*
445 U.S. 326 (1980) ................................................. 43, 57, 61

*E. Tex. Motor Freight Sys, Inc. v. Rodriguez,*
431 U.S. 395 (1977) ........................................................... 50

*Edwards v. Peake,*
22 Vet. App. 29 (2008) ....................................................... 47

*Edwards v. Shinseki,*
582 F.3d 1351 (Fed. Cir. 2009) ......................................... 46

*Gerstein v. Pugh,*
420 U.S. 103 (1975) ........................................................... 35

*Godsey v. Wilkie,*
31 Vet. App. 207 (2019) ................................... 35, 36, 37, 51

*Hodge v. West,*
155 F.3d 1356 (Fed. Cir. 1998) ........................................................ 32

*Holliday v. Principi,*
14 Vet. App. 280 (2001) .................................................................... 32

*J.D. v. Azar,*
925 F.3d 1291 (D.C. Cir. 2019) .............................................. 36, 58, 59

*In re Literary Works in Elec. Databases Copyright Litig.,*
654 F.3d 242 (2d Cir. 2011) .............................................................. 43

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) .......................................................................... 25

*Memphis Light, Gas & Water Div. v. Craft,*
436 U.S. 1 (1978) ......................................................................... 46, 47

*Mokal v. Derwinski,*
1 Vet. App. 12 (1990) ........................................................................ 23

*Monk v. Shulkin,*
855 F.3d 1312 (Fed. Cir. 2017) ................................... 4, 35, 41, 43, 56

*Monk v. Tran,*
843 F. App'x 275 (Fed. Cir. 2021) .................................................... 35

*Mullane v. Cent. Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) .......................................................................... 46

*Nolen v. Gober,*
222 F.3d 1356 (Fed. Cir. 2000) ........................................................ 32

*Ollis v. Shulkin,*
857 F.3d 1338 (Fed. Cir. 2017) ........................................................ 22

*Olson v. Brown,*
594 F.3d 577 (7th Cir. 2010) ............................................................ 37

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) ..................................................................... 48, 49

*Prickett v. Nicholson,*
20 Vet. App. 370 (2006).........................................................31

*Roberts v. McDonald,*
27 Vet. App. 108 (2014).........................................................31

*Roche v. Evaporated Milk Ass'n,*
319 U.S. 21 (1943)..............................................................16

*Salazar v. King,*
822 F.3d 61 (2d Cir. 2016) .................................................37, 39

*Saunders v. Wilkie,*
886 F.3d 1356 (Fed. Cir. 2018) .............................................22

*U.S. ex rel. Sero v. Preiser,*
506 F.2d 1115 (2d Cir. 1974) ...............................................43

*Skaar v. McDonough,*
48 F.4th 1323 (Fed. Cir. 2022)...................................3, 42, 59

*Skaar v. McDonough,*
57 F.4th 1015 (Fed. Cir. 2023)..............................................3

*Skaar v. Wilkie,*
32 Vet. App. 156 (2019).......................................................59

*Sosna v. Iowa,*
419 U.S. 393 (1975).............................................................39

*U.S. Parole Comm'n v. Geraghty,*
445 U.S. 388 (1980)......................................27, 36, 38, 39

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011)...........................50, 51, 52, 53, 55

*Wilson v. Gordon,*
822 F.3d 934 (6th Cir. 2016)...............................................37

*Winters v. Gober,*
219 F.3d 1375 (Fed. Cir. 2000) ............................................32

*Wolfe v. Wilkie,*
  32 Vet. App. 1 (2019) ................................................................ 43, 44

*Wolin v. Jaguar Land Rover N.A., LLC,*
  617 F.3d 1168 (9th Cir. 2010) .......................................................... 59

*Zevalkink v. Brown,*
  102 F.3d 1236 (Fed. Cir. 1996) ......................................................... 24

**Statutes**

28 U.S.C. § 1651(a) ........................................................................ 5, 16

38 U.S.C. § 7105(b)(1) ........................................................................ 7

38 U.S.C. § 7252(a) ............................................................................. 5

38 U.S.C. § 7261(a)(2) ..................................................... 11, 17, 25, 28

38 U.S.C. § 7292 ................................................................................. 5

38 U.S.C. § 7292(c) ........................................................................... 22

38 U.S.C. § 7292(e)(1) ...................................................................... 22

**Rules and Regulations**

38 C.F.R. § 19.29 ............................................................................... 7

38 C.F.R. § 19.32 ........................... 11, 18, 24, 25, 26, 31, 32, 33, 34, 51, 52

38 C.F.R. § 19.35 ............................................................................... 8

38 C.F.R. § 19.52(b)(1) ...................................................................... 8

68 Fed. Reg. 69,062 (Dec. 11, 2003) ..................................................... 7

Fed. R. Civ. P. 23 .......................................................... 3, 42, 48, 51, 58

U.S. Vet. App. R. 22(a)(3) ................................................... 42, 57, 60

U.S. Vet. App. R. 23 ........................................................................ 12

U.S. Vet. App. R. 23(a) ..................................................................... 42

U.S. Vet. App. R. 23(a)(1) ............................................... 57, 58

U.S. Vet. App. R. 23(a)(2) ................................................... 51

U.S. Vet. App. R. 23(a)(3) ................................................... 57

U.S. Vet. App. R. 23(a)(5) ............................................... 57, 59

**Other Authorities**

Dep't of Veterans Affairs, Office of Inspector Gen., *Veterans Benefits Administration-Review of Timeliness of the Appeals Process*, (Mar. 28, 2018), https://www.va.gov/oig/pubs/VAOIG-16-01750-79.pdf ...................... 14

VA Appeals and Reviews Manual (M21-5) ............................... 7

William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:12 (6th ed. 2022) ............................................ 58

William B. Rubenstein, Newberg on Class Actions § 2:11 (5th ed. 2011) ............................................................ 36

William B. Rubenstein, Newberg on Class Actions § 2:13 (5th ed. 2011) ............................................................ 35

7A Wright & Miller, Fed. Prac. & Proc. Civ. § 1764 ............................ 59

## STATEMENT OF RELATED CASES

No other appeal in or from the same proceeding in the U.S. Court of Appeals for Veterans Claims ("Veterans Court") was previously before this or any other appellate court.

Counsel are not aware of any cases in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal, within the meaning of Fed. Cir. R. 47.5(b) and the accompanying practice note.

# INTRODUCTION

When the Department of Veterans Affairs devised a computer program to automatically close untimely legacy appeals to the Board of Veterans' Appeals, the agency undoubtedly intended such automation to save cost and labor, and perhaps even to ensure accuracy. Instead, the agency accomplished the opposite. As revealed by the proceedings in this case, VA's automated electronic database that tracks legacy appeals, known as VACOLS (short for the Veterans Appeals Control and Locator System), has systematically, automatically, and erroneously closed appeals as untimely—ending thousands of appeals that *were* timely and should have been heard by the Board.

The late J. Roni Freund and Marvin Mathewson, for whom Appellants Mark Freund and Mary S. Mathewson have substituted, were two among those thousands. Having the benefit of representation, Ms. Freund and Mr. Mathewson were able to learn through their counsel that their appeals had been erroneously closed. The claimants then brought a Petition To Compel Agency Action seeking a determination by the Veterans Court that the erroneous closures of their appeals by this computer program was unlawful and asking for

reinstatement of their appeals.  They also filed, simultaneously with their Petition, a Request for Class Certification and Class Action seeking to make that relief classwide—that is, to extend the same relief to every claimant who, like them, had timely perfected an appeal from the denial of benefits under the legacy system but had, year after year, failed to hear back from the agency because VACOLS had (unbeknownst to the claimants) closed their appeals long ago.

The wrongful closures were unlawful.  The agency reinstated Freund and Mathewson's individual appeals shortly after the Petition's filing, but Petitioners had suffered greatly from the delay.  Mr. Mathewson had passed away in the three years following his timely appeal while waiting for agency review.  Ms. Freund also passed away after the filing of the Petition.  Moreover, though the agency reinstated the Petitioners' individual appeals, VA worked to prevent others like Petitioners from getting similar relief.  The Secretary urged the Veterans Court to dismiss the entirety of the action as moot, and deprive the thousands of other Board appellants of the same relief.  The Veterans Court did so, dismissing the Petition and denying the Request

for Class Certification and Class Action for lack of adequacy and commonality.

This Court should reverse. The Veterans Court's decision proceeded on a series of logical missteps that rewrote black letter law on mootness and class action. The Veterans Court erroneously conflated the mootness of Petitioners' individual claims with the prerequisites for class certification. Instead, as decades of Supreme Court precedent in the Article III and Federal Rule of Civil Procedure 23 context instruct, individual claimants may serve as class representatives for claims that become moot as to them, but remain not moot to the rest of the class, when challenging conditions that are inherently transitory.

Members of this Court have recently observed that the decision in *Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022), "will effectively eliminate class actions in the veterans' context," *Skaar v. McDonough*, 57 F.4th 1015, 1017 & n.1 (Fed. Cir. 2023) (Dyk, J., dissenting from denial of rehearing en banc), while recognizing that "[t]he only exception would seem to be class actions for petitions for writs of mandamus," *id.* This case addresses that remaining exception. This appeal seeks to preserve the availability of the class-action device for

mandamus petitions. If the Veterans Court's decision stands, even that narrow exception for petitions seeking extraordinary relief would be gone.

Because it is always an option for VA to moot the proposed class representatives' claims while failing to address the underlying problem for countless others affected (most of whom are likely not fortunate enough to have legal representation), the Veterans Court's decision effectively guts the availability of class actions for mandamus petitions too. This Court's intervention is therefore critical to ensure that the class-action device remains an available tool for "promoting efficiency, consistency, and fairness, and improving access to legal and expert assistance by parties with limited resources." *Monk v. Shulkin (Monk II)*, 855 F.3d 1312, 1320 (Fed. Cir. 2017).

Despite declaring this "a troubling case," the Veterans Court nevertheless "trust[ed] that the Secretary will proceed in executing the plan he proposed to correct the situation that has come to light through this proceeding. The Nation's veterans (and their dependents) deserve no less." Appx23. The agency has not, to counsel's knowledge, executed

such a plan.  Undoing the errors of the Veterans Court's decision is therefore all the more important.

This Court should reverse and remand for the Veterans Court to decide the merits of the Petition.

## JURISDICTIONAL STATEMENT

The Veterans Court had jurisdiction under 38 U.S.C. § 7252(a) and 28 U.S.C. § 1651(a) in aid of its prospective jurisdiction.  The Veterans Court entered judgment on November 14, 2022.  Appx25. Petitioners timely appealed on January 6, 2023.  Appx26-27.  This Court has jurisdiction under 38 U.S.C. § 7292.

## STATEMENT OF THE ISSUES

1. The Veterans Court dismissed the Petition as moot after concluding that Petitioners' individual claims were mooted and denying class certification.  Did the Veterans Court err in dismissing the Petition?

2. The Veterans Court denied Petitioners' request for class action and class certification after concluding that Petitioners lacked adequacy and commonality with the proposed class.  Did the Veterans Court err in denying class certification?

## STATEMENT OF THE CASE

### *Petitioners Freund and Mathewson Seek the Benefits to Which They Are Entitled by Law.*

J. Roni Freund was an Army veteran whose service took a heavy toll. Appx49. She filed a disability claim for entitlement to service connection for PTSD. Appx4. Ms. Freund was one of two original Petitioners in this action, but passed away while the Petition was pending before the Veterans Court. Appx1 n.1. The Veterans Court substituted Ms. Freund's brother, Mark Freund, as a Petitioner in her place. Appx1 n.1.

Marvin Mathewson was also an Army veteran, who suffered service-connected disabilities for many years. Appx50. He filed a claim in the legacy appeals system for special monthly compensation based on a need for aid and attendance, as well as for other service-connected compensation. Appx1; Appx4; Appx50. He passed away while awaiting resolution of his appeal from the denial of benefits, and the agency substituted Mrs. Mathewson, his surviving spouse, in his place. Appx4.

The Veterans Court referred to Ms. Freund and Mrs. Mathewson together as "Petitioners," and this brief follows suit. *See* Appx1 n.1.

**Petitioners' Claims Are Denied at the Regional Office and They Seek Review from the Board.**

There are two types of adjudicatory systems within VA: (1) claims subject to the legacy appeals system, which applies to cases in which a VA agency of original jurisdiction issued the initial decision before February 19, 2019; and (2) claims subject to the Veterans Appeals Improvement and Modernization Act of 2017. The administrative appeals in this case belong to the legacy appeals system. Appx1-2 & n.4.

The Veterans Appeals Control and Locator System (VACOLS) is an automated electronic database that tracks and monitors VA legacy appeals and records details of those appeals, such as the filing date of appellate documents. 68 Fed. Reg. 69,062, 69,064 (Dec. 11, 2003) (proposed rule); VA Appeals and Reviews Manual (M21-5), ch. 6, sec. A; *see also* Appx5.

Under the legacy system, when a claimant is dissatisfied with some aspect of a decision rendered by a Regional Office, she may initiate appellate review by submitting a Notice of Disagreement within a year of the decision. 38 U.S.C. § 7105(b)(1). Then VA prepares a Statement of the Case. 38 C.F.R. § 19.29. To perfect an appeal, a

claimant must submit a Substantive Appeal within 60 days after VA's transmittal of the Statement of the Case, or within a year of the mailing date of the notification of the VA decision being appealed, whichever is later. 38 C.F.R. § 19.52(b)(1).

When a claimant submits a timely Substantive Appeal, VA must certify the case to the Board of Veterans' Appeals (Board). 38 C.F.R. §§ 19.35, 19.52(b)(1); *see also* Appx2. Under procedures adopted by the agency, VA is to record the receipt of a timely Substantive Appeal in VACOLS. Appx5-6.

The VACOLS computer system contains an automatic sweeping function that closes appeals if the system does not register a timely Substantive Appeal. Appx2-3. In the course of proceedings in this case, several facts about the operation of VACOLS came to light for the first time. In response to the Veterans Court's requests for additional information from the Secretary—issued after VA failed to respond to Petitioners' FOIA requests for over a year, *see* Appx247—the Secretary represented that VACOLS had erroneously closed thousands of timely perfected appeals. Appx11. Specifically, VA told the Veterans Court that 3,806 of the legacy appeals closed in the VACOLS system actually

had timely Substantive Appeals associated with them.  Appx11.  That translates to nearly 70% of all of the VA-identified appeals closed after being tagged as untimely by the VACOLS auto-sweep—an astonishingly high error rate.  Appx11.

The Secretary also represented to the Veterans Court that the "erroneous closure of these appeals [was] 'human error,'" but as the Court observed, "we don't know exactly what human error happened that led to VA 'not properly identifying' the Substantive Appeals at the time they were received by VA."  Appx6 (brackets omitted).

VA has no procedure in place to ensure that every erroneously closed appeal is reinstated.  *See* Appx3; Appx17.  VA has only suggested that it will reactivate any closed appeals that it happens to learn were wrongly closed—though it is unclear how that would ever happen, since "absent further explanation from the Secretary, it appears that VA only learned of the wrongful closure of petitioners' appeals as the result of the filing of this action."  Appx6.

**Petitioners' Appeals Are Erroneously Closed by VACOLS.**

An RO denied Ms. Freund's claim for benefits in March 2017. Appx4.  Ms. Freund timely filed a Notice of Disagreement in February

2018, and VA issued a Statement of the Case on January 25, 2020. Appx49; Appx4. Ms. Freund timely filed a Substantive Appeal on March 13, 2020. Appx4. VA received the Substantive Appeal on that same day. Appx4. VA then closed her appeal, without sending any notice to Ms. Freund, when VACOLS's automated sweep function erroneously determined that Ms. Freund had not submitted a Substantive Appeal. Appx4.

An RO denied Mr. Mathewson's claim in June 2016. Appx4. Mr. Mathewson timely filed a Notice of Disagreement in January 2017, and VA issued a Statement of the Case on October 11, 2017. Appx4. Mr. Mathewson filed a timely Substantive Appeal on December 4, 2017. Appx4. VACOLS also closed Mr. Mathewson's appeal, without providing any notice to Mr. Mathewson, when the system incorrectly registered that he had not submitted a Substantive Appeal.[1] Appx5.

Through their lawyers, Petitioners discovered in late 2020 that their appeals were erroneously closed. CAVC Oral Arg. at 18:55,

---

[1] On December 24, 2020, over three years after he filed a timely Substantive Appeal, Mr. Mathewson passed away. Appx4. In July 2021, VA permitted his surviving spouse, Mrs. Mathewson, to be substituted into his place. Appx51; Appx4.

https://tinyurl.com/4r4rbzw9. By that point, Ms. Freund's appeal had been erroneously closed for more than a year and Mrs. Mathewson's appeal for nearly four years. Appx885.

### *Petitioners File Their Petition and Request for Class Certification And Class Action.*

On June 21, 2021, Petitioners, through counsel, filed a petition for extraordinary relief in the form of a writ of mandamus for a legal determination that the closures were unlawful and injunctive relief. Appx35-55. Petitioners asserted that VA erroneously closed their legacy appeals due to the automated sweeping function in VACOLS. Appx6.

Petitioners requested that the Veterans Court:

(1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2);

(2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process;

(3) order the Secretary to reactivate petitioners' appeals within 30 days;

(4) retain jurisdiction over this case until the Secretary complies with the Court's order; and

(5) order any such other relief as appropriate

Simultaneously with the Petition, Petitioners also filed a Request for Class Action and Class Certification pursuant to Rule 23 of the Veterans Court's Rules of Practice and Procedure. The Request for Class Certification and Class Action mirrored the Petition's requests for relief. Appx263-264. Petitioners proposed a class consisting of:

All claimants with a timely perfected legacy appeal:

(1) that is an original appeal,

(2) that the Secretary has closed,

(3) that remains closed,

(4) that appears in VACOLS,

(5) for which a copy of the Substantive Appeal appears in the Veterans Benefits Management System (VBMS), and

(6) for which VA has not issued a rating decision regarding the Substantive Appeal's timeliness.

Appx6-7.

Shortly thereafter, the agency reinstated Petitioners' individual appeals. VA reinstated Ms. Freund's appeal on July 7, 2021, Appx585, and VA certified Mrs. Mathewson's appeal to the Board on September 14, 2021, Appx665; Appx670; *see also* Appx673-675. The Secretary then urged the Veterans Court to dismiss Petitioners' action and deny the request for class certification as moot. *See* Appx529; Appx688.

The Veterans Court then made a series of efforts to gain information from the Secretary on the state of the agency's efforts to identify the erroneous closures.  Appx945-946; Appx1047-1051.  When it became clear to the Court that "there did not appear to be any comprehensive plan for identifying such claimants, a problem magnified by the lack of notice of the closing in the first place," it admonished that the Secretary had "c[o]me perilously close to misleading the Court by suggesting that he was engaged in proactive steps to address the problem such that it negated any need for the Court's intervention. That was clearly not so[.]"  Appx3.

The Veterans Court, for instance, issued an order prior to oral argument directing the Secretary to clarify his representation in his response to the Petition that VA was "proactively" working to identify appeals that were closed despite being timely.  Appx946 (Nov. 29, 2021 Order); *see also* Appx8.  In response to this order, the Secretary stated that "VA 'proactively and successfully identifies VA Form 9s[2] and activates appeals in VACOLS if they are prematurely closed' through various procedures."  Appx8 (quoting Appx959).  But when pressed at

---

[2] The VA Form 9 suffices as a Substantive Appeal.

argument on what the agency was doing to identify such appeals, counsel for the Secretary conceded that the mention of "proactive" actions "refers to 'VA's normal operating procedures.'" Appx9. The Veterans Court then noted that Secretary's counsel "answered in the affirmative" when asked whether "VA was doing something independent of addressing this petition to identify cases in which claimants had their appeals inappropriately closed." Appx9. But "when asked again whether VA had been investigating whether other appeals were inappropriately closed and had not been reactivated," the Secretary's counsel conceded that "VA does not have procedures 'for the sole purpose of identifying, if in a claims file, a missed VA Form 9 is present.'" Appx9.

The Veterans Court also posed questions to the Secretary's counsel concerning the agency's response to a March 2018 VA Office of Inspector General report. That report recommended, for instance, the amendment of "procedures for closing appeals records to prevent appeals [from] being closed prematurely." Appx9-10.[3] The Veterans

---

[3] *See* Dep't of Veterans Affairs, Office of Inspector Gen., *Veterans Benefits Administration—Review of Timeliness of the Appeals Process*, (Mar. 28, 2018), https://www.va.gov/oig/pubs/VAOIG-16-01750-79.pdf.

Court thus asked the Secretary's counsel if VA "ha[d] done any research to determine the potential number of people whose appeals were erroneously closed." Appx10. The Secretary's counsel responded that VA had not, but "asserted that the 'vast majority' of closed legacy appeals are properly closed" as untimely. Appx10. Because the Veterans Court was "unsure how VA could so assuredly say" this, after the Secretary's counsel had conceded that VA "had not determined the quantity or scope of appeals that were improperly closed and remained closed," the Court issued an order after oral argument seeking further clarification. Appx10-11. Specifically, the Veterans Court directed the Secretary to file affidavits from senior VA officials addressing questions concerning the scope of the problem and nature of VA's efforts to address it. Appx1050-1051 (Mar. 10, 2022, Order); *see also* Appx10-11.

In response, VA stated that in the period between May 15, 2017, and January 31, 2022, VA identified 5,456 legacy appeals in VACOLS and VBMS that were "both closed and showed possible receipt of a Substantive Appeal," and that of those appeals, 3,806 of them were "associated with a timely filed Substantive Appeal." Appx11. In other words, contrary to the Secretary's counsel's earlier representation that

the "vast majority" of terminated appeals were properly closed, in fact "*69.8%* of 5,456 closed legacy appeals with which a Substantive Appeal was filed were improperly closed." Appx11 (emphasis added). The Secretary continued to assert that "it would execute a plan to reactivate" closed appeals, but remained adamant that "VA did not plan to notify claimants whose legacy appeals were improperly closed." Appx12. Petitioners disagreed, and responded that the Petition and Request for Class Certification and Class Action were not moot because "the Secretary still has not provided relief to the proposed class members." Appx1100; *see* Appx12 n.82.

### *The Veterans Court Denies Class Certification and Dismisses the Petition as Moot.*

In setting out its decision on the Petition and Request for Class Certification and Class Action, the Veterans Court began by determining that it had authority under the All Writs Act (AWA), 28 U.S.C. § 1651(a), to consider Petitioners' claims that VA had wrongly closed their appeals. Appx12-13. The Veterans Court explained the AWA permits a writ in aid of the Court's jurisdiction if it is "to remove obstacles to appeal." Appx13 (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). Because Petitioners claimed that VA had

improperly closed their appeals to the Board, the Veterans Court could properly invoke the AWA as VA's "alleged refusal to act would forever frustrate the ability of this Court to exercise its appellate jurisdiction." Appx13 (brackets omitted).  The Veterans Court thus concluded that "petitioners' claims concerning the inappropriate closing of their administrative appeals fall comfortably within the ambit of the AWA." Appx13.

The Veterans Court likewise held that Petitioners' request for the Court to declare VA's withholding of action regarding their timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2) "is comfortably within the AWA if petitioners meant it to support their claim that the Court should order their appeals reactivated."  Appx13 (emphasis omitted).

The Veterans Court turned next to mootness.  It concluded that Petitioners' principal requests for relief were moot because VA had, after the filing of the Petition and Request for Class Action, and before the Veterans Court's decision on them, reactivated Petitioners' individual administrative appeals.  Appx15.

The Veterans Court next recognized that the "inherently transitory" exception to mootness could allow it to address the merits of the Petition concerning the improper closing of such appeals on behalf of the proposed class. Appx15; Appx17-18. But the Court held that the inherently transitory exception did not apply, because it reasoned that class certification was inappropriate. Appx15. Namely, the Veterans Court held that Petitioners' proposed class lacked commonality and adequacy. The Court reasoned that the class failed under the adequacy prong because it said the class includes an implicit no-notice requirement, and that Petitioners could not be part of that class because they learned about the erroneous closures, thus getting notice. Appx19-21.

The Veterans Court held in the alternative that the class lacked commonality because it found no common factual or legal questions or answers uniting the proposed class. Appx22-23. It held that, for the two common questions Petitioners posed—whether by erroneously closing a timely perfected legacy appeal, the Secretary is unlawfully withholding agency action; and whether failing to provide notice of the closures violates 38 C.F.R. § 19.32 and fair process—Petitioners lacked

standing to pursue those claims. Appx22-23. It held that Petitioners lacked standing to those claims, because, at the time they filed this action, they eventually learned of the closing of their appeals. Appx13.

The Veterans Court thereby denied the Request for Class Certification and Class Action, and dismissed the Petition. Appx24.

## SUMMARY OF ARGUMENT

**I.** The Veterans Court erred in dismissing the Petition. It did so by brushing aside Petitioners' standing to seek certain forms of relief and then by concluding that, where Petitioners did have standing, their claims were moot.

Petitioners had standing to seek all forms of relief requested in the Petition. The Veterans Court erroneously concluded that they lacked standing as to their requests for a determination that the agency's closure of their appeals was unlawful, as well as a determination that the failure to provide notice of the closure violated fair process, by overlooking and misconstruing Petitioners' bases for such relief. At the time the Petition was filed, no court had ruled that the closures were unlawful, and VA had not provided the notice required for a closure of a timely legacy appeal. Petitioners were

injured, those injuries were traceable to VA's actions, and they were redressable through the requested relief. As such, at the time the Petition was filed, Petitioners had standing to seek all forms of relief requested.

Moreover, although the Veterans Court did correctly recognize that Petitioners had standing to seek reinstatement of their closed appeals, it wrongly concluded that the Secretary mooted the request classwide by reinstating Petitioners' individual appeals after Petitioners sought judicial intervention. The Court reached this erroneous conclusion by failing to distinguish between Petitioners' requests for individual and classwide relief. Petitioners asked the Secretary to reactivate not only their individual erroneously closed appeals, but also those of all class members—and classwide relief had not been provided. And Petitioners were clearly members of the class they seek to represent: Their timely legacy appeals were all closed by the same computer program, VACOLS, despite timely perfecting their administrative appeals to the Board. Petitioners can thus serve as representatives of the class they were part of before the agency responded to their Petition by reinstating their appeals.

Because the Secretary reinstated Petitioners' individual appeals only after the filing of the Petition and Request for Class Certification and Class Action, the inherently transitory exception to mootness applies to preserve Petitioners' requests on a classwide basis. Under the "relation back" doctrine of the inherently transitory exception, the Veterans Court can relate back to the time of the filing of the Petition and Request for Class Action, and proceed to the merits of Petitioners' classwide claims as if the Court had correctly certified the class when the request was filed. Since the Veterans Court failed to treat Petitioners' requests for individual and classwide relief as fully distinct, however, it failed to recognize that the mootness exception extended to every request for relief made on behalf of the class. The inherently transitory doctrine therefore preserves all classwide claims for adjudication and prevents the Secretary from undercutting relief for the class by mooting just the named representatives' claims.

**II.** The Veterans Court then erred by denying class certification. Relying on flawed analogies to cases concerning money damages and class members' conflicting claims to those damages, the Veterans Court concluded that Petitioners were inadequate to represent the proposed

class. Such intra-class conflicts are not present here. The Veterans Court further erred in concluding that Petitioners lacked commonality with the proposed class by virtue of being mooted out of the class definition, conflating mootness and commonality. Petitioners meet class certification requirements.

This Court should reverse and remand for the Veterans Court to adjudicate the merits of the Petition.

## STANDARD OF REVIEW

This Court reviews legal determinations of the Veterans Court de novo. *Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018). If the decision of the Veterans Court is not in accordance with law, this Court has authority to modify, reverse, or remand the case as appropriate. 38 U.S.C. § 7292(e)(1); *see Ollis v. Shulkin*, 857 F.3d 1338, 1341 (Fed. Cir. 2017). By statute, this Court may "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof ... and ... interpret constitutional and statutory decisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c).

**ARGUMENT**

## I.   The Veterans Court Erred in Dismissing The Petition.

The Veterans Court's dismissal of the Petition was erroneous because it overlooked Petitioners' standing for all relief requested and conflated mootness with class certification requirements.

This section begins by setting forth the Article III framework for standing, and proceeds by demonstrating how Petitioners met those standing requirements at the outset of the action and how the Request for Class Certification and Class Action simultaneously filed with the Petition serves to save their request for classwide relief from mootness.

Well-settled mootness principles that the Supreme Court has set forth in the Article III context are controlling here.  As an Article I court, the Veterans Court has chosen to adopt the case-or-controversy requirements of Article III of the U.S. Constitution.  *See Mokal v. Derwinski*, 1 Vet. App. 12, 15 (1990) (noting that Congress "granted [the Veterans Court] power judicial in nature," and, "being statutorily characterized as a 'Court,'" the Veterans Court was free to, and did, "adopt as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric").  The Veterans Court's adoption of

Article III extends to the case-or-controversy requirement as well as mootness principles. *See Cardona v. Shinseki*, 26 Vet. App. 472, 474 (2014). This Court has in turn given effect to the Veterans Court's decision to adopt "the same prudential considerations behind the 'case or controversy' requirement" in its review of Veterans Court decisions. *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996), *superseded by statute on other grounds as recognized in Crews v. McDonough*, 63 F.4th 37, 39 (Fed. Cir. 2023). This Court, therefore, must reverse or modify the Veterans Court's rulings where, as here, their conclusions conflict with Article III principles and mootness doctrine.

### A. Petitioners Had Standing To Pursue Their Claims At The Outset Of The Action.

The Secretary did not dispute that Petitioners had standing at the outset of their action, and the Veterans Court agreed Petitioners had standing to seek reinstatement of their appeals. Appx13. But the Veterans Court strayed off course in concluding that Petitioners lacked standing to pursue legal determinations that their appeals were unlawfully closed, and that the closure of their appeals without notice violated 38 C.F.R. § 19.32 and fair process. Appx13.

Standing requires that Petitioners show (1) an injury in fact; (2) traceability; and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

To refresh, Petitioners requested that the Veterans Court:

> (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2);
>
> (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process;
>
> (3) order the Secretary to reactivate petitioners' appeals within 30 days;
>
> (4) retain jurisdiction over this case until the Secretary complies with the Court's order; and
>
> (5) order any such other relief as appropriate

Appx6-7.

Petitioners met all requirements of standing when they filed their Petition and Request for Class Certification and Class Action: Petitioners were injured by the erroneous closure of their appeals without notice, because they could not pursue further review of the RO decisions denying them benefits. Appx49-51. Petitioners' injuries were traceable to VA, because the agency's VACOLS system effected the closures through its automated sweeping function of untimely appeals,

even though VA had received timely Substantive Appeals from Petitioners. Appx51. And Petitioners' injuries were redressable through the Veterans Court's legal determination that the closures were unlawful and violated 38 C.F.R. § 19.32 and fair process, as well as the court-ordered reinstatement of their timely perfected appeals. Appx36-37. Finally, Petitioners had not received any of this relief at the outset of the action, because their appeals remained erroneously closed and no court had ruled that such closures were unlawful. *See generally* Appx35-55.

But the Veterans Court nevertheless suggested that Petitioners lacked "standing" to pursue claims that it believed were "moot." *See* Appx22; *see infra* 28-29. Specifically, the Veterans Court concluded "that the individual petitioners lack standing to seek Court declarations as to": "whether '(1) by erroneously closing a timely perfected legacy appeal—and in turn withholding all action on it—the Secretary is unlawfully withholding agency action; and (2) withholding notice of the appeals' closures violates 38 C.F.R. § 19.32 and fair process." Appx22 (brackets and quotation marks omitted). This was error, because the Veterans Court mistakenly conflated the proper evaluation of standing

at the outset of an action, with a determination of mootness in the later stages of a proceeding. Petitioners had standing to pursue each request for relief at the outset of the action.

**1.** The Veterans Court's conclusion—that Petitioners lacked standing to pursue a determination that the closures of their appeals was unlawful—rested on an apparent confusion of the doctrines of standing and mootness. Mootness is simply "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quotation marks omitted). As explained, Petitioners had standing at the outset of the action as to all forms of relief. *Supra* 25-26. The agency's attempt to moot Petitioners' individual claims by reinstating their appeals does not negate that initial standing.

The Veterans Court correctly suggested, at the start of its opinion, that Petitioners had standing to seek a legal determination that their appeals were unlawfully closed in support of their request for reinstatement. *See* Appx13. It stated that, "[a]s to the first request"

27

"for the Court to … declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action 'unlawfully withheld' within the meaning of 38 U.S.C. § 7261(a)(2)," Petitioners were entitled to seek that relief "if petitioners meant it to support their claim that the Court should order their appeals reactivated."  Appx13 (emphasis omitted).

This relief is precisely what Petitioners sought—a legal determination that VA's closure of their appeals was "unlawful[]," supporting their claim for reinstatement.  Section 7261(a)(2) serves as the statutory basis for determining that the agency's closure of Petitioners' appeals was unlawful.  *See* 38 U.S.C. § 7261(a)(2) ("In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall … compel action of the Secretary unlawfully withheld").

The Veterans Court thus erred in stating, at the close of its opinion, that it had concluded Petitioners *lacked* standing (at any point) to seek a legal determination that VA's closure of their appeals was unlawful.  *See* Appx22.  It did so in one passing sentence that "we held above that the individual petitioners lack standing to seek Court

declarations as to" "whether … by erroneously closing a timely perfected legacy appeal—and in turn withholding all action on it—the Secretary is unlawfully withholding agency action." Appx22 (quotation marks and brackets omitted). That was error, because Petitioners did have standing to seek that legal determination of unlawfulness at the outset of their action. No court had ruled that the agency's closures were unlawful, and the agency had not yet reinstated their appeals. Absent a determination that such closures were unlawful, Petitioners could not compel the Secretary to reinstate their appeals. Petitioners thus had standing to seek this relief at the outset, and it was erroneous of the Veterans Court to conclude otherwise.

The Veterans Court's stated reason for concluding that Petitioners "lack[ed] standing" to request a determination of unlawfulness focused on a different aspect of Petitioners' request for this relief. Appx13. Petitioners set out two distinct arguments supporting the request for a determination of unlawfulness. First, Petitioners argued that the determination of unlawfulness served as the basis for the request for reinstatement. Appx13; Appx36-37; Appx52-54; Appx881-882; Appx884; Appx886-887; *cf. Alli v. Decker*, 650 F.3d 1007, 1014 (3d Cir.

2011) (declaratory relief in the Article III context is often considered the "functional[] equivalent" to injunctive relief). Second, Petitioners argued that they sought a determination of unlawfulness because it would trigger the agency's duty to assist, and thus mitigate the prejudice caused by the delay stemming from the unlawful closures as Petitioners pursued administrative review of their cases. Appx54; Appx884-886; *see* Appx16. The Veterans Court concluded that the latter argument, which looked toward potential future consequences in Petitioners' individual administrative appeals, was speculative. Appx16. Specifically, it explained that Petitioners' argument that the Veterans Court's "declarations could prevent prejudice in the adjudication of their administrative appeals in the future" amounted to asserting a "hypothetical, future injury … insufficient to establish standing." Appx16.

But, as explained above (at 27-28), Petitioners had also based their request for a determination of unlawfulness on the simple ground that the closures were unlawful because their appeals had been timely. Petitioners' appeals were unlawfully closed, and thus need to be reinstated. The Veterans Court failed to address this ground when it

concluded Petitioners lacked standing, seeming to overlook it.  *See* Appx16; Appx22.  Petitioners had standing to seek this relief at the outset of their action to support their request for reinstatement.

**2.** Petitioners also had standing at the outset of their action to pursue a ruling "that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process."  Appx13.  That regulation provides, in relevant part, that "[t]he agency of original jurisdiction may close the appeal without notice to an appellant or his or her representative for failure to respond to a Statement of the Case within the period allowed."  38 C.F.R. § 19.32.  "Fair process" refers to the "right to fair process in the development and adjudication of their claims and appeals before VA" that all claimants have.  *Bryant v. Wilkie*, 33 Vet. App. 43, 46 (2020).  The Veterans Court has explained that the "procedural right in the name of fair process principles is primarily based on the underlying concept of the VA adjudicatory scheme" itself.  *Roberts v. McDonald*, 27 Vet. App. 108, 111 (2014) (quoting *Prickett v. Nicholson*, 20 Vet. App. 370, 382 (2006)).  Indeed, the fair process right "stems, in part, from the nature of the nonadversarial VA benefits adjudication system, which is predicated

upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Bryant*, 33 Vet. App. at 46 (quotation marks and citations omitted).

This Court, in turn, has similarly recognized that the failure to provide the required notice in the veterans' benefits context can violate "general principles of fairness," and that such failure to provide notice is "particularly unwarranted in view of the fact that 'the character of the veterans' benefits statute is strongly and uniquely pro-claimant.'" *Nolen v. Gober*, 222 F.3d 1356, 1361 (Fed. Cir. 2000) (quoting *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998)); *see also Winters v. Gober*, 219 F.3d 1375, 1376-80 (Fed. Cir. 2000) (discussing "fundamental principles of fairness" applicable in the veterans' benefits context); *Holliday v. Principi*, 14 Vet. App. 280, 289-90 (2001) ("[B]oth the Federal Circuit's and this Court's caselaw require us to ensure compliance with fair process.") (collecting authorities), *overruled in part on other grounds by Kuzma v. Principi*, 341 F.3d 1327, 1329 (Fed. Cir. 2003). Accordingly, Petitioners sought, in their Petition, a ruling that VA had violated 38 C.F.R. § 19.32 and their fair process rights in

closing their appeals, despite having received timely Statements of the Case, without providing any notice to Petitioners.  Appx48-49; Appx52.

The Veterans Court, however, made a drive-by ruling that Petitioners lacked standing to pursue this request.  It did so in a single sentence concluding that, "at the time they filed this action, [Petitioners] had notice of the closing of their appeals."  Appx13.  The Veterans Court apparently mistook Petitioners' after-the-fact discovery that their appeals had been improperly closed, for the notice the regulation and fair process requires.  Petitioners discovered, through their lawyers, that VA had improperly closed their appeals, long after VACOLS had effected those closures.  CAVC Oral Arg. at 18:55, https://tinyurl.com/4r4rbzw9; *supra* 10-11.  Petitioners never received any agency notice, before or after their appeals were improperly closed, that their appeals would be closed despite their timely perfection of appeals.  And in any event, even if Petitioners' learning, after the fact, that their appeals had been improperly closed counts as "notice," the agency still failed to provide the notice required by its own rule.  38 C.F.R. § 19.32 permits closure without notice only if the appeal is

untimely. Thus by closing Petitioners' timely appeals without any notice, the agency violated its own rule.

The Veterans Court thus erred in ruling that Petitioners lacked standing at the outset of their action to request a ruling "that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process." Appx13.

Though the Veterans Court correctly concluded that Petitioners had standing to request reinstatement of their appeals, it erred in concluding otherwise for the requests for determinations that the closures were unlawful and in violation of VA regulation and fair process. Petitioners had standing to pursue all their claims at the outset when they filed their Petition and Request for Class Certification and Class Action.

## B. Petitioners' Classwide Requests For A Determination Of Unlawfulness And Injunctive Relief Are Not Moot.

To recap, Petitioners requested, on behalf of themselves and the class, a determination that the closing of their appeals amounted to agency action unlawfully withheld and that the no-notice aspect of the closures was unlawful, and for reinstatement of those unlawfully closed appeals. *See* Appx6; *supra* 11-12. The Veterans Court, however,

proceeded to dismiss the Petition as moot.  Appx18; Appx23-24.  That was error, because the inherently transitory exception to mootness applies.

When VA has provided the relief sought in a petition for extraordinary relief, the petition is moot unless it falls under a mootness exception doctrine.  *See Monk v. Tran*, 843 F. App'x 275, 279 (Fed. Cir. 2021) (recognizing "exceptions to mootness").  Here, that mootness exception is the inherently transitory doctrine, which the Veterans Court has expressly adopted.  *See Godsey v. Wilkie*, 31 Vet. App. 207, 218-19 (2019).  "An inherently transitory claim" is a claim that "will certainly repeat as to the class, either because 'the individual could nonetheless suffer repeated harm' or because 'it is certain that other persons similarly situated' will have the same complaint."  *Id.* at 219 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)) (brackets omitted); *see generally Monk II*, 855 F.3d at 1317-18 (recognizing application of mootness exception doctrines to the Veterans Court).

Application of the inherently transitory exception is appropriate where (1) the putative class representative's individual claim might end before the court has a reasonable amount of time to decide class

certification, and (2) likely at least "some class members will retain a live claim." *J.D. v. Azar*, 925 F.3d 1291, 1311 (D.C. Cir. 2019); *see also* William B. Rubenstein, Newberg on Class Actions §§ 2:11, 2:13 (5th ed. 2011) (when the "claims are live when filed but moot before the adjudication of the class certification motion," courts have recognized an "inherently transitory" exception to mootness where "the population of the claimant population is fluid, but the population as a whole retains a continuing live claim").

Under the inherently transitory exception, mootness "can be avoided through certification of a class," including in circumstances where "[s]ome claims are so inherently transitory that the trial court will not have *even enough time to rule on a motion for class certification* before the proposed representative's individual interest expires." *Geraghty*, 445 U.S. at 399 (emphasis added). This exception applies here, where Petitioners' claims were mooted prior to a ruling on class certification. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) ("That the class was not certified until after the named plaintiffs' claims had become moot does not deprive us of jurisdiction."); *Godsey*, 31 Vet. App. at 218-19 (same) (quoting *McLaughlin*, 500 U.S. at 52); *see*

*also Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016); *Wilson v. Gordon*, 822 F.3d 934, 945-47 (6th Cir. 2016); *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010). "In such cases, the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution." *McLaughlin*, 500 U.S. at 52; *Godsey*, 31 Vet. App. at 219. In other words, the inherently transitory exception allows the Veterans Court to relate back to the time of Petitioners' filing of the Petition and Request for Class Certification and Class Action, and to proceed to the merits of the classwide claims as if the Court had correctly certified the class at the time Petitioners made the request.

**1.** The inherently transitory exception applies here. Petitioners requested a determination of unlawfulness and reinstatement of their appeals. *See* Appx15. The Veterans Court acknowledged Petitioners were seeking activation of their appeals, and that at the time of the action, the Secretary had not provided that relief. Appx12-13. Even though the agency reactivated Petitioners' individual appeals after Petitioners initiated proceedings before the Veterans Court, Petitioners' request for classwide relief was not moot, because the inherently transitory exception applies and allows the consideration of claims to

relate back to the facts as they were when Petitioners first filed their Petition and Request for Class Certification and Class Action.

The Supreme Court has held repeatedly that even where an individual controversy "is rendered moot, in the strict Art. III sense," the inherently transitory doctrine can save the case from dismissal, reflecting "the flexible character of the Art. III mootness doctrine." *Geraghty*, 445 U.S. at 400 (collecting authorities). Cases may be "found not to be moot, despite the loss of a 'personal stake' in the merits of the litigation by the proposed class representative," because the claim remains live as to the class. *Id.* That precisely describes the situation here. Petitioners' loss of their personal stake—because the Secretary reinstated their appeals—was no barrier to their pursuing relief on behalf of the class.

The source of the panel's error was in collapsing Petitioners' request for relief on the merits and Petitioners' request for class certification into a single request. *See* Appx15. But "[a] plaintiff who brings a class action presents *two* separate issues for judicial resolution." *Geraghty*, 445 U.S. at 402 (emphasis added). "One is the claim on the merits; the other is the claim that he is entitled to

represent a class." *Id.* The Supreme Court has instructed that "in determining whether the plaintiff may continue to press the class certification claim, after the claim on the merits 'expires,'" a court "must look to the nature of the 'personal stake' in the class certification claim." *Id.* The "personal stake" requirement is "to assure that the case is in a form capable of judicial resolution," that the qualities of "sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating" their positions are met. *Id.* at 403. Under the inherently transitory doctrine, a request for class certification serves to permit a case to proceed to classwide resolution even where the named plaintiff's individual claim on the merits has expired following the class request's filing, but the class's claims have not. *Id.*; *see also Sosna v. Iowa*, 419 U.S. 393, 399 (1975); *Salazar*, 822 F.3d at 73 ("The exception to the mootness doctrine for 'inherently transitory' claims asserted by the named plaintiff(s) in a class action allows such claims to 'relate back' to the time of the filing of the complaint with class allegations."). The nature of the personal stake in Petitioners' claims here are such that Petitioners could continue to present a concrete conflict capable of judicial resolution: they ask that the Court rule that VA's closures of

timely appeals were unlawful and that VA reinstate those unlawfully closed appeals.

The Veterans Court here reasoned, however, that "to the extent that petitioners' reference to agency action unlawfully withheld was merely to provide a legal basis upon which they argued the Court should order their administrative appeals reopened, the request for relief is moot because their appeals have been reactivated." Appx16 n.106. This ruling, made in a footnote, relies on mootness without any consideration of the mootness exception doctrines. The Veterans Court thereby collapsed Petitioners' individual claims with those of the class, without ever addressing the mootness exception doctrine available in the class context—and, in turn, without ever relating the claims back to the facts as they existed at the outset of the action.

Petitioners' prompt filing of a Request for Class Certification and Class Action at the outset, before the Secretary could moot their individual claims, preserved Petitioners' requests for a classwide determination of unlawfulness and for reinstatement of the erroneously closed appeals. Petitioners requested a ruling that the no-notice closures are unlawful and reinstating those appeals, and for class

certification, prior to the agency's reinstatement of their appeals.  Thus,

the inherently transitory exception applies to permit Petitioners to

pursue all the relief requested in the Petition as class representatives.

## II.    The Veterans Court Erred In Denying Class Certification For Lack of Adequacy and Commonality.

The Veterans Court next turned to evaluating the merits of

Petitioners' request for class certification.  This Court has held that the

Veterans Court has the "authority to certify and adjudicate class action

cases," "under the All Writs Act, other statutory authority, and the

Veterans Court's inherent powers."  *Monk II*, 855 F.3d at 1318.

The Veterans Court correctly recognized that the mootness of a

putative class representative's individual claims does not prevent a

court from reaching the merits of those claims if class certification is

appropriate.  Appx17.  The Veterans Court also properly determined

that the request for class certification was not mooted by the Secretary's

promise to reinstate erroneously closed appeals.  Appx3; Appx7-12;

Appx17.  The Veterans Court, however, erred in denying class

certification.  It reasoned that Petitioners lacked adequacy and

commonality with the proposed class.  That was wrong, because

Petitioners are part of the class they seek to represent, and face no conflicts with other putative class members.

To refresh, Petitioners sought to certify a class defined as:

> All claimants with a timely perfected legacy appeal: (1) that is an original appeal, (2) that the Secretary has closed, (3) that remains closed, (4) that appears in VACOLS, (5) for which a copy of the Substantive Appeal appears in VBMS, and (6) for which VA has not issued a rating decision regarding the Substantive Appeal's timeliness.

Appx243.

The "[p]rerequisites" for proceeding as a class action in the Veterans Court are (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) a showing that the Secretary or one of VA's agents has acted or failed to act on grounds that apply generally to the class. U.S. Vet. App. R. 23(a); *see also* U.S. Vet. App. R. 22(a)(3) (requiring a showing that class action is "superior" to a precedential opinion). This Court has recognized that the Veterans Court may "invoke[] Federal Rule of Civil Procedure 23 as a guide for class certification in the appeal context." *Skaar v. McDonough*, 48 F.4th 1323, 1329 (Fed. Cir. 2022). As such, the Federal Rule of Civil Procedure 23 standards "provide[] support for maintaining a class action" in the All Writs Act context.

*Monk II*, 855 F.3d at 1319 (citing *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1126-27 (2d Cir. 1974)).

Here, the Veterans Court erred in concluding that Petitioners failed to meet the adequacy and commonality requirements. Because certification is appropriate, this Court should reverse the denial of class certification. *See, e.g.*, *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 331, 340 (1980) (affirmance of Fifth Circuit decision that reversed the denial of class certification outright). At a minimum, this Court should vacate the dismissal of the Petition and denial of class certification, and remand for a redetermination of Petitioners' requests for class certification and classwide relief.

## A.     Petitioners Meet The Adequacy Requirement.

The Veterans Court erred in rejecting Petitioners' adequacy to represent the class. The adequacy requirement seeks to verify that Petitioners have "an interest in vigorously pursuing" the claims on behalf of the class, and that "nothing indicates that [they have] an interest antagonistic to the other class members' interests." *Wolfe v. Wilkie*, 32 Vet. App. 1, 30 (2019) (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)), *reversed*

*on other grounds by Wolfe v. McDonough*, 28 F.4th 1348, 1360 (Fed. Cir. 2022). To satisfy this inquiry, a class representative must, at the time of the class motion's filing, "be part of the class and possess the same interest and suffer the same injury as the class members." *Wolfe*, 32 Vet. App. at 30. Petitioners meet the adequacy requirement. Petitioners' timely legacy claims were closed due to VACOLS's erroneous sweeping mechanism and they had not received notice. *See* Appx254-255. Thus, at the time of the filing of the Request for Class Certification and Class Action, Petitioners were part of the class and suffered the same injury, and they continue to have the same interests as the class.

The Veterans Court's conclusion holding otherwise contained several errors. The Veterans Court began by injecting a new requirement into Petitioners' class definition regarding whether a class member had received notice that their appeals were closed. But even on its own terms, that new requirement was not fatal to Petitioners' request for class action. Appx19-20. The Court then relied on cases taken from the asbestos litigation context, where conflicting monetary incentives among class members in damages allocations meant that

certification was inappropriate absent further safeguards, like the creation of subclasses and appointment of separate counsel.  Appx20-21. None of those considerations apply here, because there are no intra-class conflicts.

**1.** The Veterans Court erred in concluding that Petitioners were not adequate class representatives based on a class definition neither side raised.  The Veterans Court inserted a new requirement to Petitioners' class definition, concluding that the class had an "implicit" no-notice requirement.  Appx19.  According to the Veterans Court, "petitioners' proposed class definition includes an implicit requirement that a class member have been subject to the closure of an administrative appeal without notice.  In that case, the Court concludes that the named petitioners are not members of the class they seek to represent and are therefore inadequate representatives of such a class." Appx19.

This was doubly erroneous.  To begin, Petitioners never asserted a no-notice requirement, and the Veterans Court erred in fashioning such a requirement.  *See* Appx243 (proposed class definition); *supra* 42.  And, even if the Veterans Court could impute this notice requirement to

Petitioners' class definition, it erred in construing notice as mere awareness of the wrong after it had occurred.

Instead, the Supreme Court has held in analogous circumstances that notice is inadequate where it fails to provide due notice on the procedures available to avoid the suffered injury. That is because "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13 (1978) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *accord Edwards v. Shinseki*, 582 F.3d 1351, 1355 (Fed. Cir. 2009) ("[W]e have ... held that the Due Process Clause applies to" "VA determinations of an applicant's eligibility for disability benefits.").

In *Memphis Light*, for instance, the Supreme Court addressed whether due notice requires that a municipal utility notify the customer of the availability of an avenue of redress to contest a charge, or if it was enough that the "final notice" contained in the utility company's

bills "simply stated that payment was overdue and that service would be discontinued if payment was not made by a certain date." 436 U.S. at 13. Because "[n]o mention was made of a procedure for the disposition of a disputed claim," it was "clear" that recipients were "not adequately notified of the procedures" available to them, and failed to comport with due process. *Id.* at 13-15; *see also Edwards v. Peake*, 22 Vet. App. 29, 32 (2008) ("Adequate notice requires accuracy in the description of legal rights and options available to parties.").

Here, Petitioners had already suffered the injury—the agency erroneously closed their appeals and withheld all further agency action on them—without any prior notice. The "notice" Petitioners received was no notice at all—it was their counsel discovering after the fact that their appeals had been improperly closed. *See supra* 10-11. The record is also devoid of any indication that any subsequent notice provided Petitioners with any information for avenues of redress. So, even under the Veterans Court's rewritten class definition requiring notice, Petitioners meet that definition because under Supreme Court precedent the notice that must be given is due notice, and Petitioners did not receive it.

**2.** The Veterans Court's adequacy analysis also rested on flawed analogies to cases in the Federal Rule of Civil Procedure 23 damages context that are ill-fitted to the relief and logic of this case. *See* Appx20-21. Namely, the Veterans Court invoked cases from the Supreme Court's review of asbestos litigation, where potential conflicts within damages classes led the Supreme Court to rule that certification was inappropriate absent the creation of appropriate subclasses and the appointment of separate class counsel to account for the differing financial incentives of differently situated class members.

Specifically, the Veterans Court relied on *Amchem* and *Ortiz* in its adequacy analysis. Appx20-21 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)). But *Amchem* and *Ortiz* addressed certification of damages classes where there were potentially divergent monetary interests among class members, playing out in class members' conflicting interests in the timing and nature of payments. Those considerations are not present in this case in any form.

In *Amchem*, the Supreme Court addressed the conflicting interests of class members already suffering from asbestos-related illnesses who

would want to receive immediate payments, and class members who had asbestos exposure that had not progressed into illness, who would prefer future, inflation-protected payments. *See Amchem*, 521 U.S. at 626. In *Ortiz*, the Supreme Court addressed the need to divide a class into subclasses and to secure separate representation of those subclasses in an asbestos settlement action under a limited fund theory. *See Ortiz*, 527 U.S. at 850-57.

*Amchem* and *Ortiz* are inappropriate analogies for this case. There is no settlement fund, nor difference in interests between those whose appeals were wrongfully closed at one moment in time versus another. There is also no limited fund here, or circumstance that would give rise to the conflicting interests among class members that the Supreme Court found supporting dividing the damages class into subclasses with separate representation.

To illustrate, there is no conflict between the hypothetical no-notice and notice subclasses, as the Veterans Court suggested should exist here. *See* Appx20. The same counsel could represent both claimants who have discovered that their appeals have been closed, and those who have not yet discovered whether their appeals have been

closed, but wish to find out.  There is no divergence in interests or competing goals between those two groups.

Indeed, Petitioners and every member of the proposed class have the *same* interest in VA fixing its mistake by correcting the erroneous closures, which is unaffected by the fact that some may have independently discovered, post hoc, that their appeals were closed. Petitioners and the class thus "'possess the same interest and suffer[ed] the same injury' as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *E. Tex. Motor Freight Sys, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  The Veterans Court erred in asserting a conflict where none exists.

Moreover, under the Veterans Court's reasoning, no claimant could ever belong to a no-notice class.  According to the same logic employed by the Veterans Court, a claimant would fall outside of a no-notice class simply by virtue of learning that her appeal was wrongly closed.  But every claimant who lacked notice and had her appeal closed would eventually have to be apprised that her appeal was closed to get the benefit of being part of the class.  (All the more so, to ask for relief from the erroneous closure.)  So *no* claimant could ever satisfy the

notice requirement in order for there to even be separate "notice" and "no-notice" subclasses. The Veterans Court's ruling rejecting Petitioners' adequacy to represent the class should be reversed.

## B. Petitioners Meet The Commonality Requirement.

The Veterans Court also erred in concluding that there are no "questions of law or fact common to the class." Appx22 (quoting U.S. Vet. App. R. 23(a)(2)). It did so by reasoning that Petitioners lacked standing to seek the relief they requested—conflating standing and mootness in the process. Appx22-23.

**1.** Commonality concerns "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350; *see Godsey*, 31 Vet. App. at 220-21 (adopting Fed. R. Civ. P. 23 commonality standard). There are common questions and answers of both law and fact in this case.

The common questions include, as the Veterans Court recognized, whether "(1) by erroneously closing a timely perfected legacy appeal— and in turn withholding all action on it—the Secretary is unlawfully withholding agency action; and (2) withholding notice of the appeals' closures[] violates 38 C.F.R. § 19.32 and fair process." Appx22;

Appx248; Appx920-923. They also include whether the class was entitled to reinstatement of their appeals, and other relief as appropriate. Appx6.

The Veterans Court could resolve those disputes "in one stroke," *Wal-Mart*, 564 U.S. at 350, by reinstating class members' erroneously closed appeals and holding that the closures were agency action unlawfully withheld and in violation of 38 C.F.R. § 19.32 and fair process. And the facts and legal determinations underlying those claims to relief are common to the entire class. Petitioners, like the proposed class, had their legacy appeals erroneously closed in the VACOLS system as untimely, despite having timely perfected their appeals. The "truth or falsity" of Petitioners' individual claims thus mirror the truth or falsity of the class's entitlement to relief as a whole. *Wal-Mart*, 564 U.S. at 350; *see supra* 12; *see also* Appx248-253. These conclusions become all the more apparent when considering the commonality requirement to class certification requires only a *single* common question capable of resolution with a common answer.

**2.** The Veterans Court concluded Petitioners failed to meet the commonality requirement by concluding that they lacked standing.

Appx22.  As explained in the standing discussion, however, Petitioners had standing at the outset of their action to seek a determination that the erroneous closures were unlawful and to ask for reinstatement of their closed appeals.  *Supra* 24-34.  Therefore, as to those questions, Petitioners meet the commonality requirement; as to each of those issues, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart*, 564 U.S. at 350.

And, as also explained in the standing discussion, after Petitioners filed their Request for Class Certification and Class Action, their individual requests for reinstatement were mooted by agency action that occurred too quickly for the Veterans Court to issue a decision on class certification.  *See supra* 34-41.  But mootness of Petitioners' individual claims does not mean Petitioners lacked commonality with the class.

The Veterans Court erroneously confused mootness with commonality.  The Veterans Court did so by invoking a Supreme Court concurrence to assert that "standing cannot be acquired through the back door of a class action," Appx22, and suggesting that Petitioners'

present lack of standing, because of mootness, means that they seek to circumvent standing through class certification. But that is not what the concurrence says, and that is not what Petitioners seek to do.

The concurrence the Veterans Court invoked, authored by Chief Justice Burger, stood for a different proposition than the one the panel intended. Appx22 (quoting *Allee v. Medrano*, 416 U.S. 802, 828 (1974) (Burger, C.J., concurring)). In *Allee*, Chief Justice Burger observed that an injury against a *non*-named plaintiff cannot then confer standing for a *named* plaintiff to sue and seek class certification. 416 U.S. at 828-29 (Burger, C.J., concurring) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."). That is not the situation here, where Plaintiffs have actually suffered the injury of erroneous closures of their appeals without notice. *See supra* 10, 24-34.

Instead, the Veterans Court's reliance on the concurrence reflects its central confusion in the commonality analysis: Petitioners, who

demonstrated injury in fact, were part of the class they seek to represent and, because they had commonality with other class members and satisfy other class requirements, can serve as class representatives despite their individual claims being moot. Petitioners did not suddenly lack commonality by being mooted out of the class.

Indeed, if the decision is allowed to stand, it would effectively eliminate the availability of class actions, and the inherently transitory exception, in the Veterans Court context. Taken to its logical conclusion, the Veterans Court's holding would mean that any petitioner who has received any portion of the requested relief before the Veterans Court has ruled on the class certification request would, by virtue of that relief, lack commonality with the class, and never be able to serve as a class representative. But that is not how commonality works. The commonality requirement looks to a "common contention," "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. And Petitioners and the class here have common

contentions of fact and law regarding the unlawful closures of their appeals that remain unresolved. *See supra* 51-52.

This case also illustrates the circular nature of the Veterans Court's reasoning, which would effectively thwart the application of the inherently transitory doctrine in any case: the members of this proposed class suffered the same injury as Petitioners, but have yet to receive the relief; yet if a class can never be certified for want of commonality, the inherently transitory exception can never apply to save a mandamus petition and request for classwide relief from mootness.

But that is precisely the kind of strategic mooting the inherently transitory exception and the class-action device were meant to address. This Court, in holding that aggregate adjudication was available to the Veterans Court, determined that class certification and the attendant mootness exception doctrines would "help the Veterans Court" achieve the much-needed review that VA has historically been successful at frustrating. *See Monk II*, 855 F.3d at 1320-22 (noting that "[c]ase law is replete with" examples of VA responding to mandamus petitions "by correcting the problem within the short time allotted for a response, and

[having] the petition is dismissed as moot because the relief sought has been obtained," thus "evad[ing] review"). This is in line with additional well-settled principles underlying the class-action device and the mootness exception doctrines recognized by the Supreme Court. *See, e.g.*, *Roper*, 445 U.S. at 339 (admonishing that allowing defendants to "pic[k] off" named plaintiffs "before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions"). Therefore, to preserve the availability of class actions and the inherently transitory mootness exception before the Veterans Court, the commonality holding must be reversed.

## C.   Petitioners Meet All Other Class Certification Requirements.

Petitioners satisfy the remaining requirements for class certification. They are: numerosity, typicality, a showing that the agency "has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other appropriate relief is appropriate respecting the class as a whole," and a showing of the superiority of class certification to a precedential opinion. U.S. Vet. App. R. 23(a)(1), (3), (5); U.S. Vet. App. R. 22(a)(3). The Veterans Court did not address these remaining certification requirements in its decision, but this

Court should conclude that Petitioners have met them and certify the class, or, at minimum, remand for the Veterans Court's resolution.

### 1. The class is sufficiently numerous.

Petitioners meet the numerosity requirement. With the Secretary having identified nearly four *thousand* legacy appeals closed that were associated with a timely filed Substantive Appeal, the putative class easily meets the requirement of being "so numerous that consolidating individual actions in the Court is impracticable." U.S. Vet. App. R. 23(a)(1); *see* Appx11; *see also* Appx246-247; Appx917-920; *supra* 8-9.

Federal courts have certified classes "even if they have fewer than 20 members," depending on the circumstances of the case. *Azar*, 925 F.3d at 1323 (reviewing Fed. R. Civ. P. 23 context); *accord* William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:12 (6th ed. 2022) ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone."). Petitioners well clear any minimum threshold.

### 2. The legal issues Petitioners raise are typical of the class.

Petitioners also meet the typicality requirement. "[T]ypicality is ordinarily met 'if the claims or defenses of the representatives and the

members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) (quoting 7A Wright & Miller, Fed. Prac. & Proc. Civ. § 1764); *see also Skaar v. Wilkie*, 32 Vet. App. 156, 193 (2019) (typicality asks if the class representative and class members "have the same or similar injury," and whether "other class members have been injured by the same course of conduct") (quoting *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)), *vacated and remanded on other grounds sub nom. Skaar v. McDonough*, 48 F.4th 1323, 1329 (Fed. Cir. 2022). Petitioners' injuries are typical of the class, because they and others have had their timely perfected legacy appeals closed. *See* Appx253-254; Appx923-926.

### 3. VA has acted and failed to act on grounds that apply generally to the class, so that injunctive and other relief is appropriate for the class as a whole.

Petitioners likewise satisfy Rule 23(a)(5) of the Veterans Court's Rules of Practice and Procedure, which asks whether the Secretary or his agent "has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other appropriate relief is

appropriate respecting the class as a whole." VA has both acted and failed to act on grounds that apply generally to the entire class.

Through its computer program in VACOLS, VA has acted to close timely perfected legacy appeals. And because VA failed to verify whether those appeals were untimely before allowing VACOLS to close appeals, and failed to provide notice to claimants whose legacy appeals VACOLS has closed as untimely to comply with regulations and mitigate the chance of error, VA has also failed to act on grounds that apply generally to the class. *See also* Appx255-256; Appx926-928.

### 4. Aggregate adjudication is superior to a precedential opinion.

Petitioners have also established the superiority of aggregate adjudication. Appx258-262; Appx928-931. The Veterans Court dismissed the Petition outright and declined to issue a precedential opinion. And no precedential opinion would likely ever be able to issue because of VA's strategic mooting of individual claims. Thus this litigation has demonstrated why the class vehicle is not only preferable, but required.

Even if a precedential opinion could issue, however, class action remains superior. U.S. Vet. App. R. 22(a)(3). Many of the affected

claimants are unlikely to be monitoring the Veterans Court's docket for precedential opinions, and are unlikely to realize that such a ruling would even apply to them, since they may not know their appeals have been closed. As such, the class-action procedure is a superior vehicle to a precedential decision, because for all practical purposes the class-action device is the most realistic means for the affected claimants to get relief.

Finally, aggregation is a superior means to resolve the issues presented in the Petition, because it would obviate the waste of judicial resources of entertaining multiple petitions posing the same questions and seeking the same relief. Here, the class seeks notice and reinstatement of erroneously closed legacy appeals, which would be granted through resolution of Petitioners' claims and request for class certification. *See Roper*, 445 U.S. at 339 (noting that thwarting of class actions "would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement"); Appx256-260. Class certification would provide the Court an orderly and efficient mechanism to adjudicate the merits of the Petition on an aggregate basis—ordering the same relief for all.

## CONCLUSION

This Court should reverse the denial of class certification and remand for adjudication of the Petition.

Respectfully submitted,

*/s/ Jonas Q. Wang*

John D. Niles
Kenneth H. Dojaquez
CARPENTER CHARTERED
P.O. Box 2099
Topeka, KS 66601

Jonas Q. Wang
Melanie L. Bostwick
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street NW
Washington, DC 20005
(202) 339-8400

*Counsel for Petitioners-Appellants*

April 13, 2023

## ADDENDUM

Opinion, No. 21-4168, filed October 20, 2022 ................................... Appx1

Judgment, No. 21-4168, filed November 14, 2022......................... Appx25

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-4168

MARK FREUND AND MARY S. MATHEWSON, PETITIONERS,

v.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before ALLEN, MEREDITH, and LAURER, *Judges*.

**O R D E R**

ALLEN, *Judge*, filed the opinion of the Court.

Mark Freund is the brother of J. Roni Freund, who served the Nation in the United States Army.[1] Mary S. Mathewson is the surviving spouse of Marvin Mathewson, who also served the Nation in the Army. While there is no relationship between Ms. Freund and Mrs. Mathewson, they do have something in common. Each had an appeal pending before VA concerning a claim for benefits. Each timely sought review before the Board of Veterans' Appeals. And each had their appeals closed because VA mistakenly thought they had not perfected their appeals to the Board.[2] So, they joined together to petition the Court to rectify the Agency's errors. And they sought to represent a class of similarly situated claimants.

A bit more context is useful at this point to set the stage. There are currently two types of adjudicatory systems for claims within VA: Claims that are subject to the legacy appeals system and claims that are subject to the Veterans Appeals Improvement and Modernization Act of 2017 (AMA). The legacy appeals system applies to cases in which a VA agency of original jurisdiction (AOJ) issued the initial decision before February 19, 2019.[3] The appeals that led to the petition in

---

[1] Ms. Freund was one of the two original petitioners in this action. Unfortunately, she passed away on July 7, 2022, after this matter had been submitted for decision. Ms. Freund's brother, Mark Freund, moved to be substituted as a petitioner in his sister's place. The Secretary recognized Mr. Freund as a proper substitute to continue his sister's pending claims at the Agency and thus did not oppose the motion. On October 12, 2022, the Court granted Mr. Freund's motion to be substituted as a petitioner. For ease of reference, we will generally refer to Ms. Freund as a petitioner, although, as we have explained, Mr. Freund has been substituted in her place.

[2] As we will explain below, technically Mrs. Mathewson did not have her own appeal closed. Rather, she substituted into an administrative appeal of her husband after he passed away. It was his appeal that was closed. This distinction is not material to our consideration or decision of this matter. So, for the sake of readability, we will generally refer to Mrs. Mathewson as if she had been in the position of her husband before his death (as we have done in the paragraph above).

[3] 38 C.F.R. § 3.2400(b) (2022).

this case are subject to the legacy appeals system because each petitioner's administrative appeal originated from an AOJ decision that was issued before that date.[4]

Under the legacy system, when a claimant is dissatisfied with some aspect of a decision rendered by a VA AOJ, he or she may initiate appellate review of that decision by submitting a Notice of Disagreement (NOD) within one year of the decision at issue.[5] If a claimant submits a timely NOD, VA prepares a Statement of the Case (SOC) that provides information to the claimant concerning the arguments, evidence, issues, applicable laws and regulations, and AOJ determinations of the claimant's claim(s) so that the claimant can prepare an effective appeal before the Board.[6] If a claimant wishes to perfect an appeal to the Board, he or she must submit a VA Form 9, the "Substantive Appeal," within 60 days after the date on which VA transmits the SOC or within one year of the date of mailing of the notification of the VA decision being appealed, whichever is later.[7] And when a claimant submits a timely Substantive Appeal, VA must certify the case to the Board.[8]

The Veterans Appeals Control and Locator System (VACOLS) is an automated electronic database that tracks and monitors VA legacy appeals and records details of those appeals, such as the filing date of appellate documents and issuances of decisional documents.[9] VACOLS has a "sweeping" function through which VA automatically closes legacy appeals on the first day of the month following 65 days after an SOC has been mailed or following one year after notice of the AOJ decision was mailed if VACOLS does not reflect that a claimant has submitted a Substantive Appeal.[10] When VA sends a claimant an SOC, VA also informs the claimant of the 60-day deadline to file a Substantive Appeal to perfect an appeal and that if the claimant does not file a Substantive Appeal, the appeal will be closed.[11] However, VA does not give notice to a claimant when his or her appeal is closed "for failure to respond to [an SOC] within the period allowed" as a result of the VACOLS sweep.[12]

---

[4] Petition (Pet.) at 15 (Ms. Freund received a rating decision for her claim in March 2017), 16 (Mrs. Mathewson's rating decision was issued in June 2016).

[5] 38 U.S.C. § 7105(b)(1).

[6] 38 C.F.R. § 19.29 (2022).

[7] 38 C.F.R. § 19.52(b)(1) (2022) ("[A] Substantive Appeal must be filed within 60 days from the date that the [AOJ] mails the [SOC] to the appellant, or within the remainder of the 1-year period from the date of mailing of the notification of the determination being appealed, whichever period ends later."); *see* 38 C.F.R. § 19.22 (2022) ("A Substantive Appeal consists of a properly completed VA Form 9, 'Appeal to Board of Veterans' Appeals,' or correspondence containing the necessary information.").

[8] *See* 38 C.F.R. §§ 19.35 (2022), 19.52(b)(1).

[9] 68 Fed. Reg. 69,062, 69,064 (Dec. 11, 2003) (proposed rule); VA APPEALS AND REVIEWS MANUAL (M21-5), ch. 6, sec. A.

[10] M21-5, ch. 6, sec. B.4.b; Secretary's (Sec'y's) Response (Resp.) to Pet. at 17 (citing Sec'y's Resp. to Pet., Exhibit (Ex.) 16).

[11] Sec'y's Resp. to Pet. at 17 (citing Sec'y's Resp. to Pet., Ex. 16); *see* M21-5, ch. 6, sec. B.3.c; M21-5 ch. 7, sec. D.3.h.

[12] 38 C.F.R. § 19.32 (2022).

Petitioners allege that VA inappropriately closed their legacy appeals—for which they submitted timely Substantive Appeals—without notice, due to VACOLS's automated closure function. On behalf of themselves and a class of similarly situated claimants, petitioners request that the Court, among other things, order VA to reopen the closed appeals and (1) declare VA's actions concerning the erroneous closures of appeals with timely filed Substantive Appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); and (2) declare that the no-notice element of VA's closures of such appeals violates 38 C.F.R. § 19.32 and principles of fair process.

There is much about this case that we find troubling. To be clear, the issue is not that VA has leveraged technology by using VACOLS to manage the appeals process. Done right, such an approach is laudable. The problem is that it became clear during the course of these proceedings that VA knew that there were claimants whose claims had been erroneously closed through the use of the VACOLS sweeping function. VA maintained that this was not really a problem because as soon as VA learned of an erroneous closing, it would automatically reactivate the appeal at issue. But there did not appear to be any comprehensive plan for identifying such claimants, a problem magnified by the lack of notice of the closing in the first place. And, as we will discuss below, the Secretary came perilously close to misleading the Court by suggesting that he was engaged in proactive steps to address the problem such that it negated any need for the Court's intervention. That was clearly not so, but it took the Court's sustained efforts over many months of inquiries as to whether this action is moot to have the Secretary admit as much. To the Secretary's credit, and as we also describe below, after oral argument the Secretary informed the Court of plans to address the issue, suggesting that the Agency had finally begun to meaningfully grapple with the serious problem this action had brought to light. We trust the Secretary will continue to follow through with the plans he presented to the Court.

Despite our concerns about the issues petitioners raise and the significance of the matters before the Court, we conclude that we must dismiss this action. As a roadmap, the order proceeds as follows: First, we provide background information about petitioners' claims at the Agency and before the Court as well as the course of proceedings in this matter. Second, we briefly discuss our statutory jurisdiction to act. Third, we address standing and mootness as applicable to the facts before us. With respect to the petitioners' individual claims, we explain why they are largely moot and otherwise that petitioners lack standing to seek the individual relief they ask the Court to award. We then explain that it would be possible for this action to continue under an exception to the mootness analysis concerning class action claims—the inherently transitory exception to mootness. However, finally, we conclude that the inherently transitory exception does not prevent dismissal here because it is inappropriate to certify the class petitioners have proposed. Therefore, we will deny class certification and also dismiss this action.

# I. BACKGROUND

## A. Petitioners' Procedural History Before VA

As we noted, petitioners were two unrelated individuals who both timely submitted Substantive Appeals for their legacy appeals that VA did not promptly certify to the Board.[13] Ms. Freund was an Army veteran who had filed a disability claim for entitlement to service connection for PTSD; an RO denied her claim in March 2017, and Ms. Freund timely filed an NOD.[14] This led to a January 25, 2020, SOC that continued the denial of Ms. Freund's claim for service connection for PTSD.[15] In response to the SOC, Ms. Freund timely filed a Substantive Appeal on March 13, 2020.[16] VA received the Substantive Appeal on the same date.[17] As we will explore in a moment, Ms. Freund's appeal was deactivated when VACOLS determined (erroneously) that she had not submitted a Substantive Appeal.[18] As we noted above, after her death, we granted Mark Freund's motion to be substituted in his sister's place as a petitioner in this action.

Mrs. Mathewson is the surviving spouse of Army veteran Marvin Mathewson. Mr. Mathewson filed a claim in the legacy appeals system for special monthly compensation based on the need for aid and attendance.[19] An RO denied his claim in a June 2016 rating decision.[20] In January 2017, Mr. Mathewson timely filed an NOD concerning the June 2016 rating decision.[21] In response, VA issued an SOC on October 11, 2017, continuing the denial of the claim.[22] On December 4, 2017, Mr. Mathewson timely filed a Substantive Appeal.[23] Unfortunately, he passed away in December 2020.[24] In June 2021, Mrs. Mathewson sought to be substituted into her late husband's administrative appeal.[25] VA granted the request in July 2021.[26] As with Ms. Freund's

---

[13] As noted earlier, in cases in which a VA AOJ, such as a regional office (RO), issued the initial decision that led to an administrative appeal before February 19, 2019, the legacy appeals system applies. 38 C.F.R. § 3.2400(b).

[14] Pet. at 15; *see* Pet. Ex. P-3, Appendix (App.) at 14.

[15] Pet. at 15 (citing Pet. Ex. P-3, App. at 10-38).

[16] *Id.* (citing Pet. Ex. P-4, App. at 39-41).

[17] *Id.*

[18] Pet. at 15 (citing Pet. Ex. P-5, App. at 42-44); Oral Argument (O.A.) at 39:39-43:34, *Freund v. McDonough*, U.S. Vet. App. No. 21-4168 (oral argument held Feb. 10, 2022), http://www.uscourts.cavc.gov/documents/Freund.MP3.

[19] Pet. at 16 (citing Pet. Ex. P-10, App. at 55-67).

[20] *Id.* (citing Pet. Ex. P-11, App. at 70-71, 77-84).

[21] *Id.* (citing Pet. Ex. P-12, App. at 96-118).

[22] *Id.* (citing Pet. Ex. P-13, App. at 119-34).

[23] *Id.* (citing Pet. Ex. P-15, App. at 145, 147-49).

[24] *Id.* (citing Pet. Ex. P-9, App. at 53-54).

[25] Pet. at 17 (citing Pet. Ex. P-17, App. at 160-61).

[26] Sec'y's Resp. to Pet. at 3 n.1 (citing Sec'y's Resp. to Pet. Ex. 10).

appeal, the appeal into which Mrs. Mathewson had been substituted had also been erroneously closed when VACOLS determined that the veteran had not submitted a Substantive Appeal.[27]

## B.   VACOLS and Petitioners' Claims

VACOLS is a computerized, automated system in which VA tracks and monitors activity within legacy appeals.[28] Certain status codes are used to reflect a corresponding action in VACOLS,[29] and VA employees must "update all applicable VACOLS fields when action is taken on an appeal."[30] When an RO receives a valid and timely NOD from a claimant, VA will create an appeal record within VACOLS.[31] In response to the NOD, VA will issue an SOC if VA decides to continue a denial on a claim.[32] Under procedures the Agency has adopted, if VA receives a timely Substantive Appeal in response to the SOC from the claimant, VA must record the receipt of the Substantive Appeal in VACOLS.[33] VA must also update VACOLS for the subsequent tracking activity of a Substantive Appeal.[34] Once VA enters the date it receives the Substantive Appeal into VACOLS, this action is supposed to officially place the appeal on the Board's docket.[35] This information is also recorded in the Veterans Benefits Management System (VBMS) where an end product is established for the Substantive Appeal.[36] If VA does not receive a Substantive Appeal, at all or on time, VA will automatically close an appeal in VACOLS on the first day of the month

---

[27] Pet. at 16 (citing Pet. Ex. P-16, App. at 155-57).

[28] M21-5, ch. 6, sec. A.1.a ("[ROs] use VACOLS to track legacy appeals, i.e. disagreements to RO decisions made before February 19, 2019.").

[29] *See, e.g.*, M21-5, ch. 6, sec. A.1.c ("When . . . the Board has completed action on an appeal[,] [t]hen VACOLS shows . . . history status (HIS).").

[30] M21-5, ch. 6, sec. A.1.d. VACOLS fields that must be updated include items such as dates, Board hearing options, and diaries for pending actions. *Id.*

[31] VA Off. of Inspector Gen., Off. of Audits & Evaluations, Veterans Benefits Administration Review of Timeliness of the Appeals Process 1-2 (Mar. 28, 2018), https://www.oversight.gov/sites/default/files/oigreports/VAOIG-16-01750-79.pdf.

[32] *Id.* at 2.

[33] M21-5, ch. 6, sec. B.4.a.

[34] *Id.*, ch. 6, sec. B.4.d.

[35] VA Off. of Inspector Gen., Off. of Audits & Evaluations, Veterans Benefits Administration Review of Timeliness of the Appeals Process 2 (Mar. 28, 2018), https://www.oversight.gov/sites/default/files/oigreports/VAOIG-16-01750-79.pdf.

[36] M21-5, ch. 6, sec. B.4.c. VA has described an end product as "the primary workload monitoring and management tool for the [Veterans Service Center]." VA Off. of Inspector Gen., Off. of Audits & Evaluations, Inspection of the VA Regional Office New Orleans, Louisiana 11 (Aug. 17, 2017), https://www.oversight.gov/report/va/inspection-va-regional-office-new-orleans-louisiana (last visited June 4, 2022). It is a tool to track claims. An RO inputs claims and issues under end product controls when those claims or issues are received. VA Manpower Control and Utilization in Adjudicative Divisions Manual (M21-4), ch. 4, sec. 4.3.a. End products are associated with claim labels, which "provide a more specific description of the claim type that a corresponding end product . . . represents." M21-4, App. C, sec. C.1.a.

following 65 days after an SOC is issued or one year following the notification date of an AOJ decision, whichever is later.[37]

It is undisputed that petitioners timely filed their Substantive Appeals; yet VACOLS did not capture the timely filing of their Substantive Appeals.[38] Thus, petitioners' appeals were closed in the VACOLS system and not certified to the Board. The Secretary characterizes the premature or erroneous closure of these appeals as "human error," but we don't know exactly what human error happened that led to VA "not properly identif[ying]" the Substantive Appeals at the time they were received by VA.[39] However, we do know that the closings were based on the running of the VACOLS sweeping function.[40] As a result of these erroneous closings, VA took no action on petitioners' appeals until VA reactivated them in July 2021.[41] The Secretary's counsel stated at oral argument that petitioners' appeals were reactivated as a result of "VA's established policy to reactivate" appeals VA learns were wrongly closed.[42] Of course, absent further explanation from the Secretary, it appears that VA only learned of the wrongful closure of petitioners' appeals as the result of the filing of this action.

## C. Petition and Request for Class Action

In their petition, petitioners argue that VA inappropriately closed their legacy appeals due to the automated sweeping function in VACOLS. They request that the Court: (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process; (3) order the Secretary to reactivate petitioners' appeals within 30 days; (4) retain jurisdiction over this case until the Secretary complies with the Court's order; and (5) order any such other relief as appropriate.[43]

We pause to address a procedural wrinkle concerning the petition. Petitioners filed this petition jointly. They recognized the Court's rules did not expressly allow such joint filings, but argued that we should allow them to proceed together.[44] In a November 2021 order, the Court directed the Secretary to address whether he opposed the joint filing of the petition.[45] The Secretary

---

[37] M21-5, ch. 6, sec. B.4.b; Sec'y's Resp. to Pet., Ex. 17.

[38] *See* Sec'y's Resp. to Pet. at 2 (noting that Ms. Freund and Mr. Mathewson had each perfected their appeals prior to the closure in VACOLS).

[39] Sec'y's Resp. to Court's Nov. 29, 2021, Order at 12; *see* Sec'y's Resp. to Pet. at 19.

[40] Sec'y's Resp. to Pet. at 2; O.A. at 39:39-43:34.

[41] Sec'y's Resp. to Pet. at 2-3; *id.*, Ex. at 3, 11.

[42] O.A. at 1:17:04-:23.

[43] Pet. at 2-3.

[44] *Id.* at 2 n.1.

[45] Nov. 29, 2021, Court Order at 1-2.

responded that he did not oppose petitioners' joint filing of their claims.[46] Given the Secretary's acquiescence in petitioners' joint filing, as well as our resolution of this matter in this order, we will proceed on the basis that joinder was proper here. We stress, however, that nothing in this order should be taken as adopting a particular test for determining when joinder is appropriate.

Along with their joint petition, petitioners also filed a request for class action and class certification (RCA). They sought certification of a proposed class consisting of:

> All claimants with a timely perfected legacy appeal: (1) that is an original appeal,[47] (2) that the Secretary has closed, (3) that remains closed, (4) that appears in VACOLS, (5) for which a copy of the [S]ubstantive [A]ppeal appears in VBMS,[48] and (6) for which VA has not issued a rating decision regarding the [S]ubstantive [A]ppeal's timeliness.[49]

In support of the RCA, petitioners assert that they are seeking resolution of common legal issues, including whether "(1) by erroneously closing a timely perfected legacy appeal—and in turn withholding all action on it—the Secretary is unlawful[ly] withholding agency action; and (2) withholding [N]otice of the [A]ppeals' closures[] violates 38 C.F.R. § 19.32 and [f]air [p]rocess."[50] They requested on behalf of the class in part that the Court "deem the Secretary's withholding of action on the proposed [c]lass members' timely perfected legacy appeals to constitute agency action 'unlawfully withheld'" and declare that "the no-notice element of the Secretary's closure of the proposed [c]lass members' timely perfected legacy appeals violates 38 C.F.R. § 19.32 and [f]air [p]rocess."[51]

We ordered the Secretary to respond to both the petition and the RCA and allowed petitioners to file replies as to both matters. Based on the Secretary's initial responses to the petition and RCA it was unclear to the Court what actions the Secretary had taken to identify other administrative appeals, aside from petitioners', in which legacy appeals were prematurely closed. In that regard, the Secretary's response to the petition seemed to suggest that he was engaged in such efforts by asserting that he had "been proactively and successfully working to identify cases

---

[46] Sec'y's Resp. to Court's Nov. 29, 2021, Order at 1, 3-4 (explaining that petitioners meet the standards described in Rule 20 of the Federal Rules of Civil Procedure and *Monk v. Shulkin*, 2018 U.S. App. Vet. Claims LEXIS 61, No. 15-1280 (Jan. 23, 2018) (en banc order), because petitioners' claims arise out of the same transaction of VA closing their appeals in VACOLS, and petitioners share the common question of whether VA wrongfully closed their appeals despite timely submission of their Substantive Appeals).

[47] RCA at 8. Petitioners refer to original claimants or, if the original claimant is deceased, an individual eligible to substitute for the original claimant under 38 U.S.C. § 5121A. *Id.* at 9. They also specify that "original appeal" is one that the Board has not previously remanded. *Id.*

[48] Petitioners indicate "closed" to mean that VACOLS designates that the appeal's status is "HIS" meaning "history." *Id.* at 9. M21-5, ch. 6, sec. B.4.b explains that "[i]f a [S]ubstantive [A]ppeal is not timely input, the VACOLS record will automatically close and show a status of history (HIS)."

[49] RCA at 8.

[50] *Id.* at 13.

[51] *Id.* at 28.

where an appeal was prematurely closed despite a timely VA Form 9 having been filed, and to reactivate those appeals."[52]

On November 29, 2021, we ordered the Secretary to provide additional information and a more detailed explanation concerning his alleged identification of cases that were prematurely closed despite a timely Substantive Appeal being filed. We specifically asked the Secretary to explain what he meant when he stated that he has been "proactively" working to identify such appeals.[53]

In response to the Court's November 2021 order, the Secretary stated that VA "proactively and successfully identifies VA Form 9s and activates appeals in VACOLS if they are prematurely closed" through various procedures implemented within VACOLS and VBMS.[54] The Secretary explained that since the findings of a March 2018 VA Office of Inspector General (OIG) report, VA has amended its procedures to improve its identification and tracking of timely filed Substantive Appeals. First, the Secretary laid out the end product framework that he implemented during the investigation that led to the March 2018 OIG report.[55] This revised framework was effective May 15, 2017.[56] VA established end product and claim label schemes to track and monitor legacy appeals through both VACOLS and VBMS.[57] Second, the Secretary described the initial mail intake process in which VA identifies Substantive Appeals and updates VACOLS and VBMS thereafter,[58] noting the different possible reasons an appeal may be improperly closed despite a timely Substantive Appeal submission.[59] Third, and distinct from the initial mail intake process, the Secretary explained that a multiple-review process takes place at certain points of VA claims adjudication: (1) a veterans service representative reviews a claims folder when developing evidence, (2) a rating veterans service representative reviews the claims folder when rendering a decision, and (3) another veterans service representative reviews the claims folder when authorizing an award.[60] Finally, the Secretary explained that VA routinely administers monthly and annual national-level quality control reviews of a sample size of claims to identify errors

---

[52] Sec'y's Resp. to Pet. at 19; *see* Secretary's Response to Request for Class Action at 10 ("[T]he Secretary already has an established process in place for proactively and successfully identifying prematurely closed appeals and reactivating those appeals."), 13 ("[T]he Secretary has been proactive in correcting each case where an appeal was prematurely closed.").

[53] Nov. 29, 2021, Court Order at 2.

[54] Sec'y's Resp. to Court's Nov. 29, 2021, Order at 12.

[55] *Id.* at 7.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 8-9.

[59] *See id.* at 9-10. The Secretary asserts that delays in processing a timely VA Form 9 may be due to: submission of the VA Form 9 close to expiration of the 60-day period for perfecting an appeal, delays in the physical mailing of a timely post-marked VA Form 9, a VA Form 9 being sent to the wrong VA office before being rerouted to the correct VA office, and human error.

[60] *Id.* at 11.

within those individual claims.[61] The Secretary stated that these procedures constitute the steps VA has taken to "proactively and successfully [identify] VA Form 9s and [reactivate] appeals in VACOLS if they are prematurely closed."[62]

The Court held oral argument on February 10, 2022. During oral argument, the Court posed several questions to the Secretary's counsel for which counsel either did not have a response or provided responses that were unclear.

First, the Court asked the Secretary's counsel to clarify VA's "proactive" actions concerning identification of inappropriately closed Substantive Appeals. [63] He stated that "the term 'proactively' in [his] initial response" refers to "VA's normal operating procedures" to identify Substantive Appeals that were previously filed with which a prematurely closed appeal is associated. [64] Then, the Secretary's counsel answered in the affirmative that VA was doing something independent of addressing this petition to identify cases in which claimants had their appeals inappropriately closed.[65] However, when asked again whether VA had been investigating whether other appeals were inappropriately closed and had not been reactivated, the Secretary's counsel responded that VA does not have procedures "for the sole purpose of identifying, if in a claims file, a missed VA Form 9 is present."[66] The Secretary's counsel stated that VA's intake procedures are designed to ensure that appeals are not deactivated in error and that the Agency reactivates appeals on an ongoing basis when it comes to VA's attention that an appeal has been inappropriately closed.[67] After all of this, however, it was still unclear to the Court whether the Secretary was, at that time, doing anything with respect to the reactivation of prematurely closed appeals that could legitimately be termed "proactive" or if he had any plans to do so and it was thus equally unclear whether the RCA was moot, as the Secretary suggested at oral argument.[68]

Next, during oral argument, the Court referenced a statement in a March 2018 OIG report concerning VA's anticipated future actions related to the issues the OIG had identified about VA's appeals processing procedures. Specifically, the Court asked the Secretary's counsel to explain, with respect to VA's response to a recommendation by the OIG concerning error reduction in closing VACOLS records, what VA meant by the language "[VA] [was] in the process of updating the pre-site visit protocol, to include a review of closed appeals."[69] The Secretary's counsel

---

[61] *Id.* at 12.

[62] *Id.*

[63] O.A. at 43:37-45:40.

[64] *Id.* at 47:47-48:19.

[65] *Id.* at 48:59-50:19.

[66] *Id.* at 52:54-53:22.

[67] *Id.* at 59:26-:49.

[68] "Proactive" is "acting in anticipation of future problems, needs, or changes." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/proactive (last visited July 26, 2022).

[69] O.A. at 53:22-:50; *see* Sec'y's Resp. to Court's Nov. 29, 2021, Order, Ex. 1 (Mar. 2018 OIG report) at 37 ("[OIG's] Recommendation 3: . . . implement a plan to amend Veterans Benefits Administration's procedures for closing appeals records to prevent appeals being closed prematurely.").

forthrightly responded that he did not know what the quoted statement referred to,[70] but he offered to provide a supplemental response to explain VA's efforts concerning this portion of the March 2018 OIG report.[71] Relatedly, when asked whether VA has done any research to determine the potential number of people whose appeals were erroneously closed, the Secretary's counsel responded that VA had not done so.[72]

Finally, the Secretary's counsel asserted that the "vast majority" of closed legacy appeals are properly closed because VA did not receive a Substantive Appeal.[73] Counsel did not explain the bases for this statement given that VA had not attempted to identify the appeals that have been closed in the first place.[74] The Court was unsure how VA could so assuredly say that the vast majority of closed legacy appeals were related to a lack of filing a Substantive Appeal if VA had not determined the quantity or scope of appeals that were improperly closed and remain closed.[75]

### D. The Secretary's Post-Argument Actions

Following oral argument, the Court ordered the Secretary to file an affidavit or affidavits from senior VA officials addressing several matters that had been the subject of questioning at argument, particularly regarding the possible size of the proposed class and whether the RCA is moot. We largely quote our requests for information in full to provide some context for the true lack of clarity the Secretary provided at argument (as well as in his pre-argument submissions) about the scope of the problem at the heart of this petition:

1. Other than the estimates the Secretary provided in his previous briefing, what is the number of appeals, as of January 31, 2022, that remained closed in VACOLS and that had been closed since May 15, 2017, (i.e., the effective date in which VA revised its procedures by implementing a new end product structure [in VACOLS] according to the March 2018 OIG report) due to the alleged failure to file a Substantive Appeal, regardless of whether such an appeal ultimately is determined to be appropriately or inappropriately closed?

2. Of the appeals identified in response to Question 1 above, how many of those appeals do not show *any* activity associated with the claims file after the date of closure of the appeal?

3. Has VA sent a notice letter to either or both groups identified in response to Questions 1 and 2 above? If not, why is the Secretary contending that the request for class action is moot if VA has not taken steps to notify claimants that their appeals may have been prematurely closed?

---

[70] O.A. at 53:51-:56.

[71] *Id.* at 55:00-:12.

[72] O.A. at 55:46-56:22.

[73] O.A. at 1:01:34-:42.

[74] O.A. at 1:00:27-:48.

[75] O.A. at 55:45-56:22.

4. [Omitted]

5. In reference to Recommendation #3 of the March 2018 OIG report, VA explicitly stated that, with respect to error reduction in prematurely closed appeals through VACOLS, it "[was] in the process of updating the pre-site visit protocol, to include a review of closed appeals records." Other than the end product framework referenced in VA's response to Recommendation #3 and the procedures the Secretary previously provided in his briefings, precisely what programs, procedures, or other actions has VA implemented regarding reviewing closed appeals records based on VA's response to Recommendation #3 in the March 2018 OIG report? The response to this question must specifically address what is referred to as "a review of closed appeals records" in the OIG report.

6. In light of the petition and given the Secretary's knowledge of the appeals closure errors in this case, has the Secretary undertaken any actions, other than the procedures the Secretary provided previously in both his initial and supplemental briefings, to identify legacy appeals that have been inappropriately closed due to the failure to file a Substantive Appeal? Describe those actions in detail, including whether they were implemented before or after oral argument in this matter. If the Secretary has undertaken no actions to identify such appeals, explain why he is contending that the request for class action is moot. If he has undertaken any action to identify such appeals, what remedial plans does the Secretary have to address the issue concerning the inappropriately closed appeals of the identified claimants?[76]

The Secretary responded to our post-argument order on April 11, 2022. To begin with, the Secretary provided the Court with information concerning the number of inappropriately closed legacy appeals in the period between May 15, 2017, and January 31, 2022. From the pool of closed legacy appeals records during that time period, VA identified 5,456 legacy appeals in VACOLS and VBMS that were both closed and showed possible receipt of a Substantive Appeal.[77] And of those identified appeals, VA found that 3,806 of them were associated with a timely filed Substantive Appeal.[78] In other words, 69.8% of 5,456 closed legacy appeals with which a Substantive Appeal was filed were improperly closed.[79]

The Secretary also, really for the first time, fully acknowledged that his purportedly "proactive" steps to address the problem at the heart of this petition amounted to adopting certain procedures in response to the 2018 OIG report and reactivating appeals when VA learned of an inappropriate closure.[80] Indeed, the Secretary stated clearly that "*following oral argument before*

[76] Mar. 10, 2022, Court Order at 4-5 (emphasis in original; internal citations and footnotes omitted). Request #4 concerns a Freedom of Information Act request that is not relevant to the issues discussed in this order.

[77] Sec'y's Resp. to Court's Mar. 10, 2022, Order at 5, Ex. 1.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 6-7, Ex. 1 ¶ VI.

*the Court* on February 10, 2022, on March 18, 2022, [the Veterans Benefits Administration] began a focused review of legacy appeals that had been closed for failure to file a Substantive Appeal."[81] The Secretary also stated that, while VA did not plan to notify claimants whose legacy appeals were improperly closed, it would execute a plan to reactivate those closed appeals by the end of fiscal year 2022, and he continued to assert that the RCA is moot.[82]

As we alluded to above, the Court is grateful that the Secretary developed a plan to address the serious problem of having administrative appeals inappropriately closed, especially when no notice is provided of such closures. But we can't help but wonder what took the Secretary and his counsel so long to clearly explain what had been done to address the problem and, more importantly, what had not been done. Quite simply, it should not have taken multiple orders and the lengthy questioning of three Federal Judges at oral argument to have learned what the Secretary eventually told us in his April 11, 2022, submission.

With the background out of the way, we can turn to the substance of the petition and RCA.

## II. JURISDICTION

We begin with jurisdiction. Of course, we must always assure ourselves that we have jurisdiction to act,[83] even though no one seriously questions that we have jurisdiction to consider the petition—or at least some aspect of it. Rather, the parties have jousted about the various bases on which our jurisdiction is based. Because the nature of the relief sought is critical to assessing our jurisdiction, we repeat what petitioners seek in this action. They ask the Court to: (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process; (3) order the Secretary to reactivate petitioners' appeals within 30 days; (4) retain jurisdiction over this case until the Secretary complies with the Court's order; and (5) order any such other relief as appropriate.[84]

There is no doubt that we may consider this matter under the rubric of the All Writs Act (AWA) with respect to petitioners' claims that VA had (at the time of the filing of the action)

---

[81] *Id.* at 5 (emphasis added).

[82] Sec'y's Resp. to Court's Mar. 10, 2022, Order at 4-6, Ex. 1. For completeness sake, we note that we granted petitioners' motion to file a reply to the Secretary's response to our order. Petitioners took issue with the Secretary's assertion that VA's actions since March 10, 2022 (e.g., VA's review and subsequent identification of legacy appeals closed between May 15, 2017, and January 31, 2022) renders petitioners' RCA moot. Specifically, petitioners argue that despite VA's actions since March 2022 in connection with the Court's March 2022 order, the Secretary still has not provided relief to the proposed class members VA identified and therefore petitioners' RCA is not moot. Petitioners' Resp. to Sec'y's Resp. to Court's Mar. 10, 2022, Order at 2-8. We will return to the question of mootness of the RCA given the Secretary's post-argument actions below. To preview, the Secretary's actions have not mooted our consideration of the RCA.

[83] *See Foster v. McDonough*, 34 Vet.App. 338, 351 (2021); *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019) (per curiam order); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

[84] Pet. at 2-3.

wrongfully closed their appeals. The AWA provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[85] Our jurisdiction is tied to final Board decisions.[86] It is well established that, functionally, a writ would be in aid of our jurisdiction if it is "to remove obstacles to appeal."[87] Also, the AWA "'extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected.'"[88] Or as the Court recently characterized the issue, the AWA provides the authority to act "in aid of our *prospective* jurisdiction, where 'an alleged refusal to act would forever frustrate the ability of [this Court] to exercise its appellate jurisdiction.'"[89]

Here, petitioners' claims concerning the inappropriate closing of their administrative appeals fall comfortably within the ambit of the AWA. Considering that their appeals were closed in the VACOLS system despite the timely filing of their Substantive Appeals, the Board would not render a decision on those appeals. And if that were so, we could never exercise our jurisdiction because there would be no final Board decision for us to review. This is a far cry from arguments amounting to mere speculation or proposed hypothetical situations that would not support proceeding under the AWA.[90] In fact, the scenario before us concerning the erroneously closed appeals is precisely the type of situation the AWA was designed to rectify.

There are two requests for relief that, at least in part, don't fit so comfortably within the AWA framework: petitioners' request for the Court to (1) declare VA's withholding of action regarding petitioners' timely filed legacy appeals as agency action "unlawfully withheld" within the meaning of 38 U.S.C. § 7261(a)(2); and (2) declare that VA's closures of petitioners' appeals without notice violate 38 C.F.R. § 19.32 and fair process.[91] As to the first request, it too is comfortably within the AWA *if* petitioners meant it to support their claim that the Court should order their appeals reactivated. However, to the extent petitioners seek an order concerning the future consequences of any past inappropriate closure,[92] we will explain below that this claim is speculative and, therefore, they lack standing to seek this relief. As to the second request concerning the "no notice" feature of the closings, petitioners also lack standing to bring this claim for relief because, at the time they filed this action, they had notice of the closing of their appeals and, to the extent they claim they might be harmed in the future because of the lack of notice, that claim is as speculative as the first one concerning harm from the inappropriate closings. The

---

[85] 28 U.S.C. § 1651(a); *see Monk v. Shulkin*, 855 F.3d 1312, 1318 (Fed. Cir. 2017); *Gardner-Dickson v. Wilkie*, 33 Vet.App. 50, 54-55 (2020), *aff'd without opinion sub nom. Gardner-Dickson v. McDonough*, 2021 U.S. App. LEXIS 33000 (Fed. Cir. Nov. 5, 2021).

[86] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[87] *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943).

[88] *Erspamer v. Derwinski*, 1 Vet.App. 3, 8 (1990) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04 (1966)).

[89] *Love v. McDonough*, 35 Vet.App. 336, 342 (2022) (per curiam order) (emphasis in original) (quoting *Erspamer*, 1 Vet.App. at 8).

[90] *See id.*

[91] Pet. at 2-3.

[92] *See* Petitioners' Reply in Support of Pet. at 5-7 (discussing possible future harms related to loss of evidence).

bottom line is that we need not wrestle with a jurisdictional basis for these requests for relief because they are not properly before the Court based on a lack of standing.

As we said, the parties don't dispute that we could proceed under the AWA at least with respect to the request for reinstatement of the petitioners' appeals. And we agree. But in the interest of completeness, we acknowledge certain additional arguments petitioners advance concerning jurisdiction. Petitioners contend first that the Court has jurisdiction over their petition under 38 U.S.C. § 7252(c) in purported aid of the Federal Circuit's jurisdiction pursuant to 38 U.S.C. § 7292.[93] The Court recently expressly rejected this argument as a basis for our jurisdiction in the context of a petition.[94] So, we need say no more on that point. And petitioners argue that our authority under 38 U.S.C. § 7261(a)(2) to "compel action of the Secretary unlawfully withheld or unreasonably delayed" also has jurisdictional implications.[95] But, as we noted above and explain below, either the petitioners lack standing to make the remaining requests for relief, or those requests are moot. Moreover, even as to the claim properly asserted under the AWA, we'll explain why petitioners' requests for reinstatement of their appeals are moot as well, even though they presented a live controversy at the time the action was filed. Therefore, we need not resolve petitioners' arguments about the meaning of section 7261(a)(2) in the context of AWA petitions, and we leave them for another day.

### III. MOOTNESS AND STANDING

Just because we have subject matter jurisdiction to consider some aspect of the petition does not mean that we can necessarily reach the merits of any of petitioners' allegations. Before we can do so, we must address whether there are any claims that continue to present a live controversy over which we may exercise jurisdiction and, if there are such claims, whether petitioners can seek the relief they ask the Court to award.

This Court has adopted the case-or-controversy requirements of Article III of the Constitution of the United States.[96] These requirements include both standing and mootness.[97] To have standing, a party must demonstrate an injury in fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."[98] In terms of mootness, as relevant here, when VA has provided the relief sought in a petition for extraordinary relief, the petition is moot as to that request for relief under case-or-controversy principles.[99] In that situation, the Court lacks jurisdiction and we must dismiss the

---

[93] Pet. at 3-11.

[94] *See Love*, 35 Vet.App. at 349-53.

[95] Pet. at 12-13.

[96] *Cardona v. Shinseki*, 26 Vet.App. 472, 474 (2014) (per curiam order); *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994); *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990).

[97] *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

[98] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

[99] *See Monk v. Wilkie*, 32 Vet.App. 87, 97 (2019) (en banc order), *aff'd in part, dismissed in part sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021); *Godsey v. Wilkie*, 31 Vet.App. 207, 218 (2019) (per curiam order); *Thomas*

action with respect to the relief VA has provided.[100] Petitioners can avoid dismissal under these circumstances only if there is some exception to mootness that would preserve the Court's jurisdiction to entertain a matter.

In this section, we first address petitioners' individual claims for relief in their petition. We conclude that petitioners' principal requests for relief are moot because VA has reactivated their administrative appeals. As to the other forms of individual relief petitioners request, to the extent they are not moot, we conclude petitioners lack standing to seek such relief. Second, we briefly explain why the Secretary's post-argument actions have not mooted the class claims and our consideration of the RCA. And finally, we turn to whether there is an exception to the mootness doctrine that would allow us to proceed to address the merits of the petition concerning the inappropriate closing of administrative appeals for the proposed class members despite the mootness of the named petitioners' individual claims. We conclude that there is such an exception—the "inherently transitory" exception to mootness that can apply in the context of a request for relief from the Court on a class action basis. However, that exception can only assist petitioners if certification of a class were appropriate here. The final section of this order explains why certification is not appropriate, thereby making the inherently transitory exception to mootness unhelpful to petitioners here.

### A. Petitioners' Individual Claims for Relief: Mootness and Standing

In his October 2021 response to the petition, the Secretary argues that petitioners' claims are moot because VA has reactivated petitioners' administrative appeals.[101] Petitioners counter that their petition is not moot because they did not limit their requested relief to a reactivation of their appeals—pointing out that they also requested that the Court declare VA's actions of prematurely closing their appeals as agency action unlawfully withheld within the meaning of 38 U.S.C. § 7261(a)(2) and that VA's closure of their legacy appeals without notice violates 38 C.F.R. § 19.32 and fair process principles.[102]

Here, it is undisputed that VA has reactivated the administrative appeals of both petitioners.[103] Given this fact, petitioners have received the principal relief they sought: ordering the Secretary to reactivate their appeals within 30 days and our retaining jurisdiction until the Secretary does so.[104] Under these circumstances, the petition is moot as to these matters.[105]

---

*v. Brown*, 9 Vet.App. 269, 270 (1996) (per curiam order); *Mokal*, 1 Vet.App. at 15.

[100] *See, e.g.*, *Monk v. Wilkie*, 32 Vet.App. at 98; *Long v. Principi*, 17 Vet.App. 555, 556-57 (2004) (per curiam order); *Thomas*, 9 Vet.App. at 270.

[101] Sec'y's Resp. to Pet. at 3-4, 11-12.

[102] Petitioners' Reply in Support of Pet. at 5.

[103] Sec'y's Resp. to Pet. at 2, 3.

[104] *See* Pet. at 2-3.

[105] *See Monk v. Wilkie*, 32 Vet.App. at 101; *Godsey*, 31 Vet.App. at 218; *Thomas*, 9 Vet.App. at 270; *Mokal*, 1 Vet.App. at 15.

That being said, petitioners are correct to the extent they point out that they have not received *all* the relief they sought. Specifically, petitioners also asked that we declare that the closing of their appeals was agency action unlawfully withheld under 38 U.S.C. § 7261(a)(2) and that the no-notice aspect of the closures violated 38 C.F.R. § 19.32 and fair process principles.[106] But, while not moot, because petitioners lack standing to seek this relief, the fact that VA has not provided such relief does not save their claims.

We conclude that petitioners lack standing to seek these unawarded remedies because they have not alleged a sufficient injury in fact in that the harms petitioners posit might occur in the future are speculative. Petitioners maintain that, as to them, the Court should declare that the closing of their appeals amounted to Agency action unlawfully withheld and that the no-notice aspect of the closures is unlawful because making these declarations could prevent prejudice in the adjudication of their administrative appeals in the future.[107] This type of hypothetical, future injury is insufficient to establish standing. As the Supreme Court has said, "we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not sufficient."[108] Indeed, that petitioner Mathewson has requested in her merits submissions that VA provide these heightened duties further buttresses that the alleged potential harm—possible difficulties in obtaining benefits due to VA's potential refusal to provide those duties—has not yet occurred.[109] Petitioners' request for us to address speculative harms runs afoul of the clear guidance from the Supreme Court. We reject their invitation to answer the hypothetical questions they pose.

### B. Alleged Mootness of RCA

As we discussed above, following oral argument in this matter, the Court ordered the Secretary to provide additional information about VA's practice of closing and not reactivating timely appeals that is at the heart of petitioners' claims. In response, the Secretary reported that he had undertaken (although belatedly) efforts to identify claimants who had been affected by the inappropriate closings of their administrative appeals.[110] And he also informed the Court that VA planned to "reactivate the legacy appeals records in VACOLS and take the appropriate next steps,

---

[106] *See* Pet. at 2. As we noted above, to the extent that petitioners' reference to agency action unlawfully withheld was merely to provide a legal basis upon which they argued the Court should order their administrative appeals reopened, the request for relief is moot because their appeals have been reactivated.

[107] *See* Petitioners' Reply in Support of Pet. at 5-7 (contending that such declarations could unlock heightened duties to assist and to consider the benefit of the doubt when VA adjudicates their appeals on the merits, which in turn could potentially assist them in obtaining benefits).

[108] *Clapper*, 568 U.S. at 409 (emphasis added and internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see Skaar v. Wilkie*, 32 Vet.App. 156, 173 (2019) (en banc order) ("Claimants cannot simply 'allege a bare procedural violation, divorced from any concrete harm' to satisfy the injury requirement." (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)), *vacated on other grounds sub nom. Skaar v. McDonough*, 48 F.4th 1323 (Fed. Cir. 2022).

[109] *See* Petitioners' Reply in Support of Pet., Ex. P-18 at App. 177-78.

[110] *See* Sec'y's Resp. to Court's Mar. 10, 2022, Order at 5.

to include notifying each appellant that their appeal was added to the Board's docket."[111] The Secretary then added that he "anticipates that these actions will be completed no later than the end of this fiscal year."[112]

In addition to providing the Court with the information about VA's planned approach to dealing with the inappropriately closed appeals, the Secretary also argued that his plan rendered consideration of the RCA moot.[113] The Secretary's position is puzzling. He seems to be suggesting that because he committed to addressing a problem, the Court is deprived of jurisdiction to consider the issue. But that is not how mootness works. As we discussed above with respect to the individual claims, when a defendant provides all the relief sought in an action, a court may lose adjudicative power due to mootness.[114] But that has not happened here with respect to the putative class. The Secretary has promised to act with respect to all those whose appeals have been inappropriately closed. But a promise to act and actually acting are different things. After all, in the mootness context, even when a defendant voluntarily ceases wrongful conduct—the equivalent of "fixing" a problem—a case is not moot unless there is no reasonable expectation that the wrongful conduct could resume.[115] And the Supreme Court has made clear, showing that is the case is a "formidable burden."[116] In sum, we reject the Secretary's suggestion that his promise to act with respect to the class moots our consideration of the RCA.

C.  The Inherently Transitory Exception to Mootness

Although mootness of a named party's claims generally bars Federal courts from reaching the merits of claims, the U.S. Supreme Court has applied certain exceptions to mootness in situations where a class representative's personal interest may have become moot but putative class members have live claims. In this regard, a plaintiff in a civil action who brings a purported class action presents two separate issues for judicial resolution: (1) "the claim on the merits" and (2) "the claim that [the plaintiff] is entitled to represent [as] a class."[117] So, a class representative may have her claim become moot, but the claim concerning the class may remain. Courts have referred to this doctrine in class actions as the "inherently transitory" exception to mootness.[118]

The Court in *Godsey* adopted the inherently transitory exception to mootness. We explained that an "inherently transitory" claim is one that is "unavoidably time-sensitive" and

---

[111] *Id.*

[112] *Id.*

[113] *Id.* at 4.

[114] *See, e.g., Monk v. Wilkie*, 32 Vet.App. at 98; *Long*, 17 Vet.App. at 556-57; *Thomas*, 9 Vet.App. at 270.

[115] *See Friends of the Earth*, 528 U.S. at 189-90; *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

[116] *See Friends of the Earth*, 528 U.S. at 190.

[117] *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089 (9th Cir. 2011) (quoting *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 402 (1980)).

[118] *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Pitts*, 653 F.3d at 1091.

"'acutely susceptible to mootness'"[119] because a "trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires."[120] The Court of Appeals for the District of Columbia Circuit has noted that the standard of certainty for determining whether a claim is inherently transitory is relatively low; a "reasoned supposition" that a claim will not survive before a district court can reasonably be expected to rule on class certification makes that claim inherently transitory.[121]

Of course, we are bound by *Godsey*, which means that the inherently transitory exception to mootness could *possibly* allow us to reach the merits of the petition on a class basis *if* we could certify a class. And we will assume, without deciding, the class-claims here would qualify as ones that are inherently transitory. But we stress that petitioners can only benefit from this exception to mootness if the Court certifies a class. That is, if a class is not appropriate, an exception to mootness based on the existence of a class is irrelevant. As we explain next, certification of a class here is not appropriate and so the inherently transitory exception does not assist petitioners.

## IV. CLASS CERTIFICATION

Finally, we address petitioners' RCA. The "[p]rerequisites" for proceeding as a class action in this Court are:

(1) the class is so numerous that consolidating individual actions in the Court is impracticable;

(2) there are questions of law or fact common to the class;

(3) the legal issue or issues being raised by the representative parties on the merits are typical of the legal issues that could be raised by the class;

(4) the representative parties will fairly and adequately protect the interests of the class; and

(5) the Secretary or one or more official(s), agent(s), or employee(s) of the Department of Veterans Affairs has acted or failed to act on grounds that apply generally to the class, so that final injunctive or other appropriate relief is appropriate respecting the class as a whole.[122]

---

[119] *Godsey*, 31 Vet.App. at 219 (citing *Pitts*, 653 F.3d at 1091).

[120] *Godsey*, 31 Vet.App. at 219 (quoting *Cnty. of Riverside*, 500 U.S. at 51-52).

[121] *J.D. v. Azar*, 925 F.3d 1291, 1310 (D.C. Cir. 2019).

[122] U.S. Vet. App. R. 23(a).

In addition to these five prerequisites, the Court also considers whether class-wide relief is "superior" to the resolution of a matter through a precedential decision.[123] In that regard, we have held that we "will presume classes should not be certified because our ability to render binding precedential decisions ordinarily will be adequate."[124]

Recall that petitioners propose representing a class they defined as follows:

All claimants with a timely perfected legacy appeal: (1) that is an original appeal, (2) that the Secretary has closed, (3) that remains closed, (4) that appears in VACOLS, (5) for which a copy of the [S]ubstantive [A]ppeal appears in VBMS, and (6) for which VA has not issued a rating decision regarding the [S]ubstantive [A]ppeal's timeliness.[125]

We conclude that certification of a class action in this matter is not appropriate on two alternate grounds. The first proceeds on the basis that petitioners' proposed class definition includes an implicit requirement that a class member have been subject to the closure of an administrative appeal without notice. In that case, the Court concludes that the named petitioners are not members of the class they seek to represent and are therefore inadequate representatives of such a class. The second ground takes the class definition literally—meaning there is no requirement that class members have been subject to no-notice closure. Proceeding under that assumption, the Court concludes that petitioners have not met their burden to present common questions capable of class-wide resolution. Under either view of the class definition, certification is not appropriate.[126] We will discuss each ground in turn.

A. Class Definition Implicitly Including No-Notice Requirement: The Named Petitioners are Not Adequate Class Representatives

While not expressly stated in the class definition, petitioners' briefing has made clear that their claims for class-wide relief are predicated, in part, on the fact that VA does not provide notice to claimants when their administrative appeals are closed because the VACOLS sweep indicates that no timely Substantive Appeal has been filed. Indeed, the RCA refers to that fact on no fewer than 12 pages.[127] As a prime example of the way in which the no-notice concept is woven into the fabric of petitioners' class claims, the heading petitioners used to argue that there are common issues among the class reads: "this action, *which seeks relief from the erroneous, no-notice closure of timely perfected appeals*, presents questions common to the class."[128] And, of course, one of petitioners' specific requests for class-wide relief is based on the unlawfulness of VA's no-notice

---

[123] U.S. VET. APP. R. 22(a)(3).

[124] *Skaar*, 32 Vet.App. at 196.

[125] RCA at 8.

[126] *Thompson v. Wilkie*, 30 Vet.App. 345, 346 (2018) (per curiam order) (stating that each of the Rule 23 elements must be met in order to justify class action certification).

[127] *See* RCA at 1, 6-7, 10, 13-17, 19, 26, 28; *see also* Petitioners' Reply in Support of RCA at 1, 4-5, 10, 12.

[128] RCA at 13 (capitalization altered; emphasis added).

policy.[129] So, it is difficult to see how the no-notice aspect of petitioners' claims is not part of the definition of the proposed class, even if implicitly so.[130]

Proceeding on this assumption concerning the implicit requirement of a lack of notice, a class action is not appropriate here. As discussed above, to the extent petitioners seek on behalf of the class a declaration that VA's no-notice policy violates § 19.32 or fair process, petitioners lack standing. Additionally, to the extent that they may have standing as to the additional relief sought—namely, reinstating the erroneously closed appeals and finding that VA is unlawfully withholding action—because petitioners are not members of the class they seek to represent, they are not adequate representatives of the class. The difficulty with any of petitioners' proposed pathways to relief is that both petitioners were made aware in 2020 that their appeals were closed.[131] So, at the time they filed this action, both petitioners knew of the erroneous closures of their respective timely filed legacy appeals. The fact that, at that time, they *knew* their legacy appeals were inappropriately closed in VACOLS is at odds with their class definition as we have construed it because once petitioners found out their legacy appeals were closed, they were no longer part of the class they sought to represent. Stated somewhat differently, the scope of the class is overbroad in the sense that for one to be a class member, a lack of notice of their closed appeal is implicitly required. And the definition that petitioners propose, as construed by the Court, is problematic because once a claimant does discover that his or her appeal has been closed, they have notice, and therefore, could not adequately represent a class seeking redress for lack of notice. What's more, the problem with petitioners' proposed class does not result from the Secretary's actions or the transitory nature of their claims. Petitioners simply were never members of the class they seek to represent because of the nature and implicit definition of the proposed class.

Our conclusion today on this point breaks no new ground in terms of class actions in Federal courts. The Supreme Court has made clear that when a putative class representative is not a member of the proposed class, and when, by the very definition of the class itself, there can be no class representative, certification is not appropriate.

In *Amchem Products, Inc. v. Windsor*,[132] the Supreme Court established that named representatives of an asbestos-litigation settlement class "'must be *part of the class* and possess the same interest and suffer the same injury as the class members.'"[133] The named representatives in *Amchem* could not be adequate class representatives due to two primary reasons. First, the class members had varying settlement interests from one another (e.g., based on the severity and/or presence of their injury, some class members desired *immediate* payments while others wanted

---

[129] *See* RCA at 28-29 (requesting that the Court find that the "no-notice element of the Secretary's closure of the proposed [c]lass members' timely perfected legacy appeals violates 38 C.F.R. § 19.32 and [f]air [p]rocess" and that notice be provided to the members of the class).

[130] *See Nehmer v. U.S Dep't of Veterans Affairs*, No. CV-86-06160, 2020 WL 6508529, at *5-6 (N.D. Cal. Nov. 5, 2020) (concluding that veterans who served off the shores of Vietnam were part of the class and entitled to class-wide relief even though the class definition and consent decree did not explicitly reference those veterans).

[131] O.A. at 18:56-19:22.

[132] 521 U.S. 591, 625-26 (1997).

[133] *Id.* at 625-26 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (emphasis added)).

inflation-protected future payments).[134] Second, the named representatives were an undivided set of individuals that sought to represent a class that not only had differing interests in the settlement, but also, unlike the named representatives, the class members hadn't yet filed a lawsuit against the defendants.[135] The Supreme Court in *Amchem* found it was necessary for the class to be divided into discrete subclasses.[136] And because no subclasses were established[137] and the undivided named representatives sought to represent "a single giant class" instead of discrete subclasses, the representatives could not adequately represent the class as a whole.[138] Put simply, the *Amchem* Court found that the representatives did not have the same injury or interests as the class they wished to represent because they did not share the same injuries or interests of the diverse class members.

As it did in *Amchem*, the Supreme Court in *Ortiz v. Fibreboard Corp.*[139] also found applicable the need for division of a class into subclasses and corresponding, separate representation for class representation in a settlement action under a limited fund theory.[140] Like in *Amchem*, an undivided group of named representatives sought to represent a class of individuals whose members differed in certain important respects. The class consisted of people who had incurred current asbestos-related injuries and those who hadn't yet sustained injuries but were exposed to asbestos.[141] The Supreme Court in *Ortiz* found that the varying presence of injuries (or lack thereof) within the class meant the members had differing interests in the settlement, and thus, separate representation among the class representatives as well as separate subclasses were necessary to eliminate conflicting interests of counsel.[142]

Of course, our case is distinguishable from *Amchem* and *Ortiz* for many reasons. But the fundamental logic of these decisions makes clear the basic, common-sense principle that class representatives must be members of the class they seek to represent when filing a request for class action. In addition, these decisions show that when the party proposing a class crafts a definition that makes it functionally impossible for anyone to serve as a class representative, class proceedings are not appropriate.[143] That is what we have here. As *Amchem* and *Ortiz* make clear, there are some problems that simply are beyond the scope of class consideration. This conclusion provides a basis upon which to deny petitioners' request to proceed on a class basis in this matter, based on a class definition that includes an implicit, no-notice requirement.

---

[134] *Id.* at 626.

[135] *Id.* at 602.

[136] *Id.* at 627.

[137] *Id.* at 603.

[138] *Id.* at 626-27.

[139] 527 U.S. 815 (1999).

[140] *Id.* at 856 (citing *Amchem*, 521 U.S. at 627).

[141] *Id.* at 856-87.

[142] *Id.* at 856 (citing *Amchem*, 521 U.S. at 627).

[143] *See Amchem*, 521 U.S. at 627 (upholding the Third Circuit's holding that class certification by the district court was improper, in part, because it failed the adequacy-of-representation requirements of Rule 23(a)).

21

## B. Class Definition Not Including No-Notice Requirement: Lack of Commonality

Even if we approached the question of class certification by assuming that the proposed class does not include an implicit requirement of a lack of notice of the closing of an appeal and that petitioners could satisfy the prerequisite of adequacy, we would still find certification here unwarranted. This is so because that proposed class fails the requirement that "there are questions of law or fact common to the class."[144] We need not wade too deeply into the somewhat murky waters of assessing commonality.[145] As we will explain, we do not see this as a close case.

The Court's Rule 23(a)(2) is identical to the commonality requirement applicable to class actions in Federal district courts under Rule 23(a)(2) of the Federal Rules of Civil Procedure.[146] The Supreme Court has held that Rule 23(a)(2) under the Federal Rules of Civil Procedure requires a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[147] Importantly for operationalizing this significant requirement, the Supreme Court emphasized that "'[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"[148] Factual and legal differences among putative class members' claims are fatal to establishing commonality when those differences "'have the potential to impede the generation of common answers'" to the common questions said to unite the proposed class.[149]

Petitioners have failed to meet their burden to show that there are common answers to common questions going to the resolution of the action across the board.[150] They posit that the common questions here are whether "(1) by erroneously closing a timely perfected legacy appeal—and in turn withholding all action on it—the Secretary is unlawful[ly] withholding agency action; and (2) withholding notice of the appeals' closures[] violates 38 C.F.R. § 19.32 and [f]air [p]rocess."[151] However, we held above that the individual petitioners lack standing to seek Court declarations as to those two questions. And, "'standing cannot be acquired through the back door of a class action.'"[152] So, there must be something else that shows commonality. But petitioners have posed no other common question capable of class-wide resolution.

---

[144] U.S. Vet. App. R. 23(a)(2).

[145] *See, e.g.*, *Monk v. Wilkie*, 30 Vet.App. 167 (2018) (en banc) (competing opinions concerning application of commonality standard), *aff'd*, 978 F.3d 1273 (Fed. Cir. 2020).

[146] *Compare* U.S. Vet. App. R. 23(a)(2), *with* Fed. R. Civ. P. 23(a)(2).

[147] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see Monk v. Wilkie*, 978 F.3d 1273, 1277 (Fed. Cir. 2020).

[148] *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

[149] *Id*. (quoting Nagareda, *supra* note 148, at 132).

[150] *See Thompson*, 30 Vet.App. at 346.

[151] RCA at 13.

[152] *Skaar*, 32 Vet.App. at 173 (quoting *Allee v. Medrano*, 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part

22

Moreover, the fact that all the proposed class members would have to have had an administrative appeal closed due to a VACOLS sweep and have a *timely* Substantive Appeal on file is not enough to show commonality. That state of affairs may show that class members share a common characteristic. However, that feature does not establish that there is any common answer to a common question that will allow the Court to resolve the dispute "in one stroke."[153] Indeed, it is undisputed here that, if a claimant identifies a timely Substantive Appeal, VA will without further action by the claimant or the Court reactivate the appeal. In other words, there is no common question the common answer to which will allow the Court to grant or deny the precise relief petitioners seek—reopening of class members' appeals because the Agency has withheld action.[154] And because there is no such answer, there is no commonality.

* * * * *

The bottom line is that no matter how we assess the class petitioners seek to represent in this action, certification is inappropriate. Either petitioners lack standing or they are not members of the class they seek to represent or, if they are, the class does not meet the commonality requirement. Either way of approaching this issue leads to the same result, our denial of the RCA.

## V. A CONCLUDING THOUGHT

As we noted at the beginning of our order, this is a troubling case. Perhaps with the best of intentions, VA has adopted a procedure utilizing technology to streamline the process of managing a crushing appeals workload. A byproduct of that procedure is that claimants who have validly perfected an administrative appeal have had their appeals inappropriately closed. And the Agency has not told these claimants about the closures so they could protest. Although we are unable to certify the class and are precluded from providing the relief petitioners seek given the limits on judicial authority, we are heartened that the Secretary appears to have recognized the seriousness of the situation and has undertaken steps to address the issues that led to the filing of this action.[155] As we noted, however, we are also deeply disappointed that it took the Secretary so long to acknowledge the problem this petition highlighted. But, as the saying goes, better late than never. We trust that the Secretary will proceed in executing the plan he proposed to correct the situation that has come to light through this proceeding. The Nation's veterans (and their dependents) deserve no less.

---

and dissenting in part)); *see id.* (holding that Mr. Skaar did not have standing to seek on behalf of the class an order that VA recognize Palomares as a radiation-risk activity where he argued that such relief would allow him to register for VA's Ionizing Radiation Registry but denial of such enrollment was not part of the proposed class definition).

[153] *Wal-Mart*, 564 U.S. at 350.

[154] Again, the no-notice arguments can't carry the day because we are assuming that the no-notice argument is not implicit in terms of class membership.

[155] Sec'y's Resp. to Court's Mar. 10, 2022, Order at 2-3.

## VI. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that petitioners' Request for Class Action and Class Certification is DENIED. And it is further

ORDERED that the petition is DISMISSED.

DATED: October 20, 2022

*Not Published*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No: 21-4168

Mark Freund and Mary S. Mathewson, Petitioners,

v.

Denis McDonough,
Secretary of Veterans Affairs, Respondent.

### JUDGMENT

The Court has issued a decision in this case. The time allowed for motions under Rule 35 of the Court's Rules of Practice and Procedure has expired.

Under Rule 36, judgment is entered and effective this date.

Dated: November 14, 2022

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Jeffrey Messer
Deputy Clerk

Copies to:

John Niles, Esq.

VA General Counsel (027)

# CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 11589 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Jonas Q. Wang*
Jonas Q. Wang
*Counsel for Petitioners-Appellants*